(No. 35409.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. FRED MORGAN, Plaintiff in Error.

*Opinion filed November 28, 1960.*

438

WILLIAM L. LITTLEJOHN, JR., of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

A jury in the criminal court of Cook County found the defendant, Fred Morgan, guilty of the crime of larceny from the person. He was sentenced to the penitentiary for a term of not less than five nor more than ten years. On this writ of error he contends that the evidence ·was insufficient to establish his guilt beyond a reasonable doubt

and that the State's Attorney's argument before the jury was prejudicial.

The case was prosecuted on the theory that the defendant was an accessory before the fact. Section 2 of division II of the Criminal Code defines an accessory before the fact as one "who stands by, and aids, abets or assists." (Ill. Rev. Stat. 1959, chap. 38, par. 582.) Proof of guilt as an accessory before the fact will sustain a conviction on an indictment as a principal. *People* v. *Rybka,* 16 Ill.2d 394, 397.

Frank Konkel testified that he fell asleep while riding on a Chicago Transit Authority elevated train and that he had a one-dollar bill in his left hand trouser pocket. He said that he felt a hand in that pocket, and that when he awoke he saw the defendant and three other men, two of whom identified themselves as Chicago Transit Authority police officers.

The Chicago Transit Authority police officers, John O'Connor and Peter Messin, testified that when they boarded the train they observed Konkel asleep. They took seats across the aisle from the sleeping man, O'Connor sitting two seats to the rear of Konkel and facing in the same direction, and Messin sitting in front of and facing O'Connor. Shortly thereafter, the defendant and Charles Morton entered the train. The officers testified that the two men stood near the door, talking and looking "the train over" for a minute before taking seats. Although all of the seats around the sleeping man were empty, Morton chose a seat beside Konkel and the defendant sat in the empty seat in front of him. Messin and O'Connor testified that they then saw Morton place his right hand into Konkel's left hand trouser pocket, pull out a bill, and hand it over the back of the seat to the defendant. They also stated that when Messin walked toward the pair and showed them his star, the defendant dropped a dollar bill to the floor.

Morton was sentenced to the county jail after he pleaded

guilty in a separate trial. He testified in this case on be-
half of the defendant and denied that he had put his hand
in Konkel's pocket or passed any money to the defendant.
He testified that he did not sit with the defendant because,
due to the way the latter was sitting, it would have been
"sort of crowded," and that he merely leaned forward to
ask the defendant how far he was going. He stated that
he pleaded guilty "because Konkel said I had put my hand
in his pocket and the detective said I had my hand in his
pocket. I didn't have a lawyer so what alternative did I
have. I didn't want to go to the penitentiary so I got a
county jail term by pleading guilty." On cross-examination
he admitted that the judge before whom he pleaded guilty
had advised him of his rights and explained the conse-
quences of a plea of guilty.

It was within the province of the jury to determine the
weight of the evidence and the credibility of the witnesses.
It is only where we can say that there is clearly a reasonable
doubt of the guilt of the accused that we will substitute
our judgment for that of the jury. Upon this record, the
jury was warranted in finding the defendant guilty beyond
a reasonable doubt.

The defendant contends that the prosecutor's closing
argument was so prejudicial as to deprive him of a fair
trial. He vigorously urges that the prosecutor, by his re-
peated assertions that Morton was the only witness for the
defense, violated the statute which provides that a defend-
ant's failure "to testify shall not create any presumption
against him, nor shall the court permit any reference or
comment to be made to or upon such neglect." (Ill. Rev.
Stat. 1959, chap. 38, par. 734.) And he points out that,
without justification in the evidence, the prosecutor char-
acterized him as a professional pickpocket.

The People insist that there was neither a direct nor an
indirect reference to the failure of the defendant to testify
in his own defense, and therefore that the remarks do not

fall within the statutory prohibition. But it is hard to escape the conclusion that the statute was violated by repeated observations such as "the other man [Morton] who you saw testify as the only witness for the defense"; "the other man was the man you saw come over from the County Jail and testify as the only witness for the defense"; "that was the man who testified as the only witness for the defense"; "one witness [for the defense]"; and "the testimony of one individual for the defense who was their witness." In *Austin* v. *People,* 102 Ill. 261, where the statutory provision was first construed, the references to the defendant's failure to take the stand were direct and pointed. The court there laid down as a rule of practice "that such improper and forbidden reference by counsel for the prosecution shall be regarded good ground for a new trial, in all cases where the proofs of guilt are not so clear and conclusive that the court can say affirmatively the accused could not have been harmed from that cause." 102 Ill. at 264. (See, also, *People* v. *Cheney,* 405 Ill. 258; *People* v. *Annis,* 261 Ill. 157.) Subsequent cases (*People* v. *Shader,* 326 Ill. 145, 163-164; *McDonald* v. *People,* 126 Ill. 150, 154,) have applied this standard to covert references as well as direct.

The People also contend that these comments do not constitute reversible error since there was no objection by the defendant. While it is true that an assignment of error to an allegedly prejudicial argument will not ordinarily be considered on review unless objection is made in the trial court, the rule has no application where the argument is so seriously prejudicial as to prevent the defendant from receiving a fair trial. (*People* v. *Fort,* 14 Ill.2d 491, 500-501; *People* v. *Moore,* 9 Ill.2d 224, 231-232; *Belfield* v. *Coop,* 8 Ill.2d 293, 313.) Furthermore, when in the course of his argument the prosecutor stated that "the defendant Morgan himself said * * *", defense counsel did object upon the ground that the defendant had not testified. To

442

this objection the trial judge responded, "Well, the jury heard the evidence."

Finally, at the conclusion of his argument, the prosecutor stated, "They just happened to be caught in plying their trade." There was nothing in the record to support this insinuation that the defendant was a professional pickpocket and, although there was an objection, the trial judge again neglected to rule on the objection or to caution the jury to disregard the statement. As we have held, the evidence would sustain a verdict of guilty. Nevertheless, the conclusion to be reached by the jury depended upon the inferences which it would draw from the circumstances, and upon its appraisal of the credibility of the witnesses. The defendant was entitled to have his guilt or innocence determined by the jury without prejudicial argument. In our opinion he was deprived of that right in this case.

The judgment of the criminal court of Cook County is therefore reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*