**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joe Israel COSTNER and James Gunter,**
**Defendants-Appellants.**

**Nos. 16296, 16297.**

United States Court of Appeals
Sixth Circuit.
May 11, 1966.

John F. Dugger, Morristown, Tenn., H. M. Bacon, Morristown, Tenn., on brief, for Costner.

William E. Badgett, Knoxville, Tenn., for Gunter.

Ottis B. Meredith, Asst. U. S. Atty., Knoxville, Tenn., J. H. Reddy, U. S. Atty., Knoxville, Tenn., on brief, for appellee.

Before O'SULLIVAN, EDWARDS and CELEBREZZE, Circuit Judges.

O'SULLIVAN, Circuit Judge.

This cause presents the appeals of Joe Israel Costner and James Gunter from judgments entered upon a jury verdict convicting them of illegal traffic.in non-taxpaid whiskey. Appellant Costner was convicted on Counts One, Two and Five of a five count indictment. Count One charged that he and others *possessed and sold* illegal whiskey on April 18, 1962, in violation of Sections 5205(a) (2) and 5604(a) (1), United States Code, Title 26. Count Two charged that he and others *removed and concealed* illegal whiskey on the same date, April 18, 1962, in violation of the same Code sections as set out in Count One; Count Five charged that appellants Costner and Gunter and others *carried on the business of a wholesale liquor dealer* without paying the required tax on April 18, 1962, *and* on May 2, 1962, in violation of Section 5691(a), United States Code, Title 26. Appellant Gunter was convicted of the offense or offenses charged to him and others in Count Five as aforesaid.[1]

The judgments and sentences imposed are attacked upon the several grounds *first*, that the government acted *ignobly* in its use of a hireling whose activities

---

[1]. Two others, Bruce W. Costner and Wayne Doyle Costner, were charged in the same indictment. Bruce was acquitted and Wayne Doyle has not appealed his conviction. Appellant Joe Costner was acquitted of the charges of Counts Three and Four of the indictment.

produced the convicting evidence; *second,* that as to appellant Costner, Count Two did not charge a criminal offense; *third* that the District Judge erred in telling the jury that he had denied requests to charge submitted by appellants; *fourth,* that Count Five, which charged two separate offenses, was duplicitous; *fifth,* that evidence that appellant Gunter had a reputation as a dealer in moonshine was improperly admitted and, *sixth,* that the sentence imposed on appellant Gunter was illegal.

The following are the background facts. In early April of 1962, one James Stokes French was in jail awaiting prosecution for some recent illegal whiskey enterprises. French had been a long-time and large scale operator in illegal whiskey, and was well known among those people of Cocke County, Tennessee, who from time to time engage in its traditional industry of moonshining. Two agents of the United States Alcohol and Tobacco Tax Unit visited French in jail seeking to persuade him to help apprehend and convict other offenders. Among other means of persuasion was one agent's promise "If you don't work with us, I'll burn you up. If you do, I'll try to help you." French was convinced, and made a deal which would provide him with $8.00 per day expenses while working with the federal agents and an ultimate reward which would be proportionate to the number of people caught as a result of his efforts.[2]

Pursuant to his employment by the government, French called Bruce Costner, whom he had known for some years, and asked where he could buy some illegal whiskey. Bruce Costner replied that he was not engaged in such business any more and refused to help French. The latter continued his importuning, asserting his need for money and finally persuaded Bruce Costner to help. On April 18, 1962, French and a federal agent met with Bruce Costner, who took them to meet the appellant, Joe Costner, who had a history of previous moonshining activity. He at first insisted that he was not in the whiskey business, but was finally induced to go with French, Bruce Costner and another to the home of defendant-appellant James Gunter. There some thirty gallons of whiskey were purchased in a transaction which, if the government account was believed, was sufficient to convict the appellants of the April 18 offenses charged in Counts One and Five of the indictment. On May 2, 1962, a further transaction was had which, if the government's evidence was believed, was sufficient to convict appellants of the May 2 offense charged in Count Five of the indictment. Count Five asserted offenses of carrying "on the business of a wholesale liquor (illegal) dealer" on both April 18 and May 2, 1962, but the District Judge omitted the May 2 date from his charge under Count Five.[3]

We consider the alleged errors as follows:

1. Conduct of French as a government agent.

Shortly after his arrest, appellant Joe Costner with his then codefendants Bruce W. Costner and Wayne Doyle Costner made a motion to suppress all evidence obtained through the agency of James French, averring that

"the government played an ignoble part in obtaining the evidence sought to be suppressed in that it employed James Stokes French on a contingent fee basis to procure these defendants to commit a crime."

Upon the hearing of such motion French's testimony was taken which disclosed the character of his employment and his

2. French was ultimately given a reward of $800.00. The record does not disclose what happened to the case that was pending against him at the time his arrangement to assist the government was made.

3. Count One of the indictment charged that Gunter and others had on April 18, 1962, "possessed and sold" illegal whiskey. He was, however, acquitted of this charge. We have no explanation of his acquittal of this charge while being found guilty under Count Five, both of which counts related to the April 18 transaction.

method of approaching and persuading the Costners as detailed above. He further testified that in preparing him for his work the federal agents did not instruct him not to use the type of inducement and persuasion that he did employ in promoting or getting evidence of violations. The motion to suppress was denied.[4]

French was called as a witness at the trial and he gave before the jury the same account of his performance as an "agent provocateur." Appellants Costner and Gunter joined in motions for acquittal on the same grounds as supported their motion to suppress. These motions were denied and although the defense of entrapment was submitted to the jury, defendants were convicted by a verdict returned on January 10, 1964. Following the judgments of conviction and after their first motions for new trials had been denied, appellants on April 30, 1964, made further motions for new trial upon the asserted ground of newly discovered evidence. This new evidence consisted of parts of the transcripts of the trials of three men, Ramsey, Hurst, and Reese, who had been apprehended and initially convicted on evidence produced by the activities of the said French. Convictions of all had been obtained but new trials had been given them because in their first trials the character of the government's relationship with French was not known to the jury. French had not been produced in the first trials, apparently because the government did not wish to vouch for his credibility. The District Judge's opinion on granting such new trials is reported as United States v. Ramsey, 220 F.Supp. 86 (E.D.Tenn., 1963). These new trials were all had subsequent to the trial of appellants Costner and Gunter which had been concluded on January 10, 1964. Upon the separate retrial of one of these three, Ramsey, an acquittal was obtained. On April 8, 1964, at the conclusion of the trial of the other two, Hurst and Reese, in which French's activities were fully explored, the United States Attorney moved nolle prosequi, expressing his surprise and his previous lack of knowledge of the claimed machinations of French and his government employers. The Assistant U. S. Attorney said,

"I would like at this time to make a motion to the Court based on the testimony of Mr. James French which frankly to me was very surprising. I hadn't anticipated that he would testify as he did * * * it would appear to me that perhaps Mr. French overstepped the bounds a little bit in making his efforts to make the purchases of nontaxpaid whiskey from these defendants. Of course * * * we can't have A.T.U. agents with these undercover personnel at all times, and * * * where we don't * * * it is difficult to control their activities and know what representations they may be making to the individuals; and based on his testimony, * * * —all the officers deny that he was * * * coerced into this position— * * * we would move to nol pros or direction of a verdict of acquittal for the defendants."

The District Judge thereupon, after some commendation of the U. S. Attorney's action and after stating that he had been concerned whether the evidence did not as a matter of law disclose entrapment (but had concluded that it did not), granted the motion for acquittal.

Returning then to the matter before us, the District Judge filed an opinion denying the appellant's motions based upon the above interesting events. He explained again his reasons for granting new trials to Ramsey, Hurst and Reese and concluded.

"The interests of justice have now been served as to all the defendants mentioned. The statements which the Court considered the most damaging to the prosecution's principal witness French have now been presented to all the respective juries. That the jury in this case found the defendants guilty, while the jury in the second Ramsey

4. Gunter did not join in this motion, as he had not yet been arrested.

trial found him innocent, and that the prosecuting attorneys in the second trial of Reese and Hurst moved for, and obtained, entry of judgments of acquittal, is no indication whatever that the interests of justice have not been served in each instance."

■ Notwithstanding the novel procedural history of these related cases, we do not consider that the District Judge erred or abused his discretion in denying Costner and Gunter a new trial. It might indeed be that it was not "cricket" for the government to refuse to dismiss the appellants as they did the charges against Hurst and Reese, but we have no way of knowing what prompted this disparate treatment. We are not persuaded that the impeccable manners and sportsmanship that would characterize dealings between members of the Westchester Saddle and Cycle Club must be exhibited by all federal agents when dealing with criminal suspects. It may be that upon remand the Department of Justice may decide to further disavow the agent French and dismiss this case.

Appellants rely on Williamson v. United States, 311 F.2d 441 (CA 5, 1962) where the Fifth Circuit, by a divided court, held that an agreement whereby an informer was to be paid a fixed contingent fee for getting evidence against a named suspect foreclosed use of evidence obtained thereunder. We think our decision in United States v. Baxter, 342 F.2d 773 (CA 6, 1965) cert. den. 381 U.S. 934, 85 S.Ct. 1766, 14 L.Ed.2d 699, should control. In that case, informers were given a per diem subsistence allowance with promise of "further payment at the end of the investigation, which was unfortunately and probably mistakenly characterized as a reward." We held that the fixing of a specified contingent fee for catching the specific suspect in *Williamson* distinguished it from *Baxter*. We consider that the same distinction applies here.

Appellants do not contend here that they were entrapped as a matter of law. Only the appellant Costner relied on entrapment as a defense and that question was properly submitted to the jury.

2. Insufficiency of Count Two.

■ Count Two charged that Costner on April 18, 1962, "removed and concealed" a quantity of illegal whiskey contrary to 26 U.S.C.A. §§ 5205(a) (2) and 5604(a) (1). These mentioned sections do not refer to the *removal and concealment* of illegal whiskey, but describe *possession and sale* which was the offense charged in Count One for which Costner was convicted and sentenced. The evidence did not fit a charge of "removal and concealment." Such offense is covered by a different section of the Internal Revenue Code. The conviction and sentence for violation of Count Two are vacated.

3. Improper reference to denial of appellants' requests for instructions.

■ At the conclusion of his charge the District Judge, in the presence of the jury, announced,

"Now the Court has heretofore advised counsel of action on fourteen special requests to charge *and the defendants, of course, object to the Court's action in overruling each of the special requests denied.*" (Emphasis supplied.)

This was clear advice to the jury that he had found improper some of defendants' requests. Defense counsel made proper objection, but no correcting instruction was given to the jury. We consider that the intent of Rule 30, Fed.R.Crim.P. which requires that opportunity be given to object to the charge or any omission therefrom "out of the hearing of the jury" was offended by this event. In the context of this case we consider that it was prejudicial and requires the granting of a new trial.

4. Duplicitousness of Count Five.

This Count charged appellants Gunter and Costner with violation of the relevant statute on two occasions, April 18 and May 2, 1962. There was evidence that both appellants were involved in illegal transactions on these dates. In submit-

ting the case to the jury, the District Judge made reference only to the April 18 date saying,

"The fifth count of the indictment charges that on or about the 18th day of April, 1962, all four defendants, Bruce W. Costner, Joe Israel Costner and James Gunter, carried on the business of a wholesale liquor dealer. * * *."

■ The jury brought in a general verdict of guilty as to both appellants under Count Five. No objection was made to the Court's charge in this respect; neither was there any pre-verdict motion attacking Count Five for duplicity. Not until Gunter's motion for new trial was the point raised, it then being contended by Gunter's newly appointed counsel that Gunter had evidence, not offered at the trial, which would have established an alibi as to the May 2 transaction. It may be that the government meant to charge that between the dates of April 18 and May 2 Gunter and others were acting as wholesalers. That, however, was not what the indictment charged. Proper practice would have been observed by charging these distinct offenses in separate counts. Rule 8 Fed.R.Crim.P. Failure, however, to raise the question prior to trial and verdict waived the vice of duplicity. Beauchamp v. United States, 154 F.2d 413, 415 (CA 6, 1946). Inasmuch as a new trial is required, an appropriate motion may be made to test the sufficiency of the challenged Count Five.

5. Evidence of Gunter's reputation as a moonshiner.

■■■ Over objection, the government offered evidence that Gunter had a reputation for dealing in illegal whiskey. Such evidence would have been admissible had Gunter raised entrapment as a defense. Sorrells v. United States, 287 U.S. 435, 451–452, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Washington v. United States, 275 F.2d 687, 690 (CA 5, 1960); Cf. Sherman v. United States, 356 U.S. 369, 382, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). However, while at one point defense counsel representing all of the defendants announced that he was relying on entrapment as a defense, a fair reading of relevant portions of the record discloses that such defense was neither relied upon nor supported by evidence offered by Gunter. Upon argument before us, government counsel conceded that such was the case. It was error, therefore, to admit the evidence of his alleged reputation. It had nothing to do with truth and veracity, (see our decision in United States v. Walker (CA 6, 1963), 313 F.2d 236) and Gunter had not offered any character evidence. If on retrial a claim of entrapment is relied on by Gunter, the District Court can make an appropriate ruling.

6. Illegal sentence of Gunter.

Upon argument, government counsel conceded the illegality of the sentence imposed on Gunter. We need not, therefore, discuss the question, as a correct sentence can be imposed should Gunter be convicted upon retrial.

Judgments are reversed and a new trial ordered.