(No. 40375.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* MATTHEW MILLS, Appellant.

*Opinion filed May 29, 1968.*

Ward, J., took no part.
Schaefer and Klingbiel, JJ., dissenting.

Sam Adam, of Chicago, for appellant.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane, James G. Zagel, and James Veldman, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Underwood delivered the opinion of the court:

This is a direct appeal by the defendant, Matthew Mills,

from a jury conviction in the circuit court of Cook County for unlawful possession of drugs in violation of section 22—3 of the Criminal Code. (Ill. Rev. Stat. 1965, chap. 38, par. 22—3.) He was sentenced to imprisonment for not less than two nor more than seven years, and he now argues (1) that the prosecutor violated his right against self-incrimination by commenting on his failure to testify, (2) that the indictment did not allege a crime because it failed to charge that Mills "knowingly" possessed narcotics, (3) that his right to confrontation was abridged when a bailiff communicated with the jury, (4) that the court's instructions to the jury were confusing and erroneous, (5) that the use of testimony by an informer paid on a contingent fee basis violated due process of law, and (6) that the evidence failed to prove him guilty beyond a reasonable doubt.

A summary of the facts relevant to the defendant's initial contention is that on February 18, 1965, Nathaniel Clayton, a special employee of the Chicago Police Department, drove with two police officers to a tavern known as the "Corner Club" at the corner of 63rd and Ingleside streets at about 10:30 A.M. Clayton entered the tavern three or four times and each time upon leaving walked directly to report to the officers who waited in an unmarked squad car which was parked near the tavern. On his last entry into the tavern at 2:00 P.M., Clayton observed the defendant who was seated on a stool at one end of the bar. Clayton testified that a man he knew as "Pete" walked up to defendant and engaged him in conversation. During this conversation Clayton stated that he saw defendant place his hand under the plastic covering of the bar stool on which he was sitting and take out a cigarette package which he held in front of him and then replaced under the plastic cover of the stool. After viewing this incident Clayton immediately left the tavern and informed the waiting police officers who thereupon entered the tavern, arrested defend-

ant, and seized the cigarette package from under the plastic cover of his stool. This package contained two small tinfoil packets of heroin.

Three witnesses were called by the defense at the trial during which defendant did not testify. The first defense witness was Clifton White, Nathaniel Clayton's probation officer, who testified that Clayton had failed to report during certain months while he was on probation, thereby impeaching Clayton's testimony that he had always reported. The other two defense witnesses were friends of the defendant who were called to show that defendant had not been in the tavern more than 5 or 8 minutes before his arrest. One of these witnesses, James Davis Bell, testified that he was sitting at the bar when defendant entered and sat on a stool at the bar. Bell stated that he exchanged greetings with the defendant, that the defendant ordered a beer but was arrested before he was served.

In seeking a reversal for improper closing argument by the State, the defendant relies on the self-incrimination clause of the Federal constitution which was held to be violated in *Griffin* v. *California,* 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, by direct prosecutorial comment on a defendant's failure to testify. He also relies on a similar provision of the Illinois constitution (article II, section 10), as well as section 155—1 of the Code of Criminal Procedure which provides in pertinent part that "a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

The prosecutor's argument which the defendant alleges violated his right to be tried free of comment on his failure to testify was as follows: "And I say the only evidence in this case is that this man had this pack in his hand * * * he put that pack under the stool. There is no

issue on that, except that Clayton forgot to report to his probation guy four or five times. There is no issue, there is not another bit of evidence from anyone in that bar at that time that it wasn't under there. There is no one who sat on those stools who didn't say, or came in here to say that * * * this man didn't have it in his hand. Of the people who were there the only one who comes before you is Clayton. And he says he had it in his hands. White doesn't say he didn't have it. Mr. Bell doesn't say he didn't have it, or anyone else who you know was in that bar. The only one is Clayton."

An appropriate test in deciding whether such closing argument violated the defendant's right to remain silent under section 155—1 of the Code of Criminal Procedure was set out in *Watt* v. *People,* 126 Ill. 9, 32, as whether "the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to·avail himself of his legal·right to testify?" We have held it permissible, however, for a prosecutor to comment on the uncontradicted nature of the State's case even where the only person who could have contradicted the State's evidence was the defendant himself. (*People* v. *Norman,* 28 Ill.2d 77, 81, and cases cited therein.) In *People* v. *Mc-Mahon,* 244 Ill. 45, the defendant did not testify during his trial for the murder of a young girl by poisoning. Although the defendant's conviction was reversed on other grounds, the court noted that the prosecutor had not exceeded the permissible limits in commenting that no one had denied the testimony of a prosecution witness who stated that the defendant told him that if someone squealed on him he would "give him the same dose * * * [he] gave the other little bitch." The witness testified that this statement was made by the defendant in the presence of the witness and the defendant's wife, and the prosecutor commented as follows: "Has it been denied? Has it been disputed? * * * There has been no disputing of it

by any man or woman or any individual on the face of the earth. It stands. It is the evidence in this case. You can't get away from it. It has not been denied. It has not been disputed. There isn't anything to the contrary." Referring to the testimony of another witness for the State, the prosecutor said: "Is there a man or woman on earth that ever came in here and contradicted her in the least? No, sir." In stating that such closing argument did not go beyond the pale of allowable comment the court said: "If this were the most serious objection to this record we would not be disposed to reverse for that reason, although we regard the argument of the State's attorney as near the danger line. He had the right to refer to and comment on the testimony of the witnesses for the prosecution and call the jury's attention to the fact, where such was the fact, that their testimony had not been contradicted or disputed, even though plaintiff in error was the only person who was in a position to have disputed such testimony." (244 Ill. at 59; see also *People* v. *Norman; People* v. *Novak,* 370 Ill. 220, 222; *People* v. *Birger,* 329 Ill. 352, 368; *People* v. *Donahoe,* 279 Ill. 411, 433.) In contrast to this line of decisions are the cases of *People* v. *Wollenberg,* 37 Ill.2d 480, and *People* v. *Morgan,* 20 Ill.2d 437. In *Wollenberg* the prosecutor listed the six State witnesses and two defense witnesses and then commented "No one else testified. Let's get that straight", and in *Morgan* the prosecutor made repeated references to the fact that only one witness testified on behalf of the defendant. In these cases, however, the prosecutorial design appears to have been to point the finger of blame directly at the defendant for his failure to testify when it was within his power to enlighten the jury.

In the instant case Nathaniel Clayton testified that there were approximately eight or nine people in the Corner Club tavern when he entered, and defense witness Bell stated that excluding the bartender there were between ten and twelve people present when the defendant arrived. We find

it to be entirely relevant and material in evaluating the defendant's case to point out that he presented only one witness (Bell) who was in the bar when the defendant was alleged to have handled the cigarette package found under his stool. There were estimates of between eight and thirteen people in the bar at the time the defendant was said to have committed the act which provided the basis for imputing knowledge to him of narcotics which were concededly within his dominion and control, and under the circumstances we cannot accept the defense contention that the prosecutor's argument that no one had controverted the State's principal witness constituted a covert reference to the defendant's failure to take the witness stand. See *People* v. *Lawson,* 331 Ill. 380, 394, *cert.* denied 282 U.S. 815, 75 L. Ed. 729, 51 S. Ct. 332.

The indictment returned against Mills for possession of heroin stated that: "* * * on February 18th, 1965, at and within said [Cook] County, Matthew Mills committed the offense of possession of a narcotic drug, in that he unlawfully possessed and had under his control, otherwise than as authorized in the Uniform Narcotic Drug Act of said State of Illinois then in force and effect, a quantity, (the exact quantity of which is unknown to said Grand Jurors), of a certain narcotic drug, to-wit: heroin, in violation of Chapter 38, Section 22—3 of the Illinois Revised Statutes, 1963". The defendant alleges at his second point that this indictment was invalid because it failed to charge him with *knowledge* of the drug which it alleged he "unlawfully possessed and had under his control." However, this indictment was drafted in substantially the same terms as the statutory section which proscribes the unauthorized possession of narcotics. Our statute, section 22—3 of the Criminal Code, is the Uniform Narcotic Drug Act which declares it to be "unlawful for any person to * * * possess, [or] have under his control * * * any narcotic drug, except as authorized in this Act." In *People* v.

*Patrick,* 38 Ill.2d 255, we noted that "An indictment which charges an offense in the language of the statute is deemed sufficient when the words of the statute so far particularize the offense that by their use alone an accused is apprised with reasonable certainty of the precise offense with which he or she is charged." (38 Ill.2d at 258.) We believe that the indictment against Mills meets this test regardless of the absence of an express allegation that he had knowledge of the drugs found within his dominion and control.

It is undisputed that knowledge is an essential element in the chain of proof of the crime of possession of narcotics. (*People* v. *Mack,* 12 Ill.2d 151.) However, three sister jurisdictions have held that under the Uniform Narcotic Drug Act an information or indictment which is couched in the language of the statute is sufficient although lacking an averment that the accused had knowledge of the drugs in his possession. (*State* v. *Peltier,* 229 La. 745, 86 So. 2d 693; *State* v. *Williams,* 230 La. 1059, 89 So. 2d 898; *State* v. *Scarborough* (Fla. App.), 170 So. 2d 458; *Robinson* v. *State,* 163 Tex. Crim. 499, 293 S.W.2d 781.) In *Peltier* the court noted that "Defense counsel has cited no authority, and we know of none, which requires that the existence of general criminal intent or guilty knowledge be alleged in the indictment or information." (86 So. 2d at 697.) In *Scarborough,* where the defendant was charged with fraudulently obtaining a narcotic prescription in violation of the Uniform Act, the court said "Knowledge or scienter is implicit in the language of the statute and thus it does not have to be alleged separately." (170 So. 2d at 460.) The *Peltier* decision was rendered by the Louisiana Supreme Court more than a year before the July, 1957, adoption of the Uniform Narcotic Drug Act in Illinois, and the judicial construction of that Act by the Louisiana court is persuasive authority under the general principle that the judicial construction previously placed upon an adopted statute is treated as incorporated therein. (*Cook* v. *Dove,* 32

Ill.2d 109, 113; *People* v. *Beckers,* 413 Ill. 102.) Moreover, *Peltier, Scarborough* and *Robinson* provide authoritative guides for determining the question of first impression here raised under the Uniform Act since "courts will refer to decisions of other states and will construe the [uniform] statute in accordance with the construction given the [uniform] statute in other jurisdictions." 2 Sutherland on Statutory Construction, sec. 5211, and cases cited therein.

We have no doubt that the indictment defendant attacks here was sufficiently clear to enable him to prepare a defense to this action (*People* v. *Patrick,* 38 Ill.2d 255; *People* v. *Blanchett,* 33 Ill.2d 527; *People* v. *Duden,* 3 Ill.2d 16), and to plead a conviction resulting from such prosecution as a bar to any future criminal proceeding based upon the same conduct. In charging Mills with the "offense of possession of a narcotic drug" which he "unlawfully possessed and had under his control" the indictment twice uses a form of the technical term "possession" which is defined in section 4—2 of the Criminal Code to incorporate knowledge: "Possession is a voluntary act if the offender *knowingly* procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have been able to terminate his possession." (Emphasis added.) It is the law in this State that "Where a word is so used in one portion cf a statute as to have a clearly defined meaning, the same word when used in another portion of the same statute will be given the same meaning  *  *  *." (*People* v. *Talbot,* 322 Ill. 416, 422.) Accordingly we find that the defendant must be held chargeable with notice that the term "possession" used in the indictment implicitly meant *knowing* possession, and therefore we hold that the indictment returned against Mills was valid although it did not expressly allege that he had knowledge of the narcotics found within his control.

The third point raised by the defendant is that he was denied the right to confrontation when the bailiff com-

municated with a juror after the jury had retired for deliberation. After the guilty verdict was returned, the defendant's attorney presented an affidavit to the trial court in which he described the bailiff-juror communication to which he was a witness, and he argued the incident as a ground for granting a new trial. In his affidavit defense counsel states that after the jury had adjourned to the jury room he heard a buzzer ring, and he went to the anteroom adjacent to the courtroom where he observed the bailiff enter a door leading to the jury room and ask the jury what they wanted. Defense counsel's affidavit continues that he heard someone from within the jury room say either "We want further instructions" or "We want to ask a question." The bailiff's response which defense counsel claims he heard was either "You are not entitled to more instructions" or "You can't ask any questions." Another affidavit was submitted relative to this matter by Mary E. Faulkner, who is identified in the State's brief as the fiancee of the defendant, and she stated that she saw the bailiff emerge from a room adjacent to the courtroom after a minute or two and heard him say "They didn't want anything, they just wanted to ask a question but I told them I couldn't answer no question." During the argument on defendant's motion for a new trial the bailiff testified that when he answered the jury buzzer, he opened the outer door to the jury room and asked the jury if they had reached a verdict. The bailiff testified that one of the jurors responded "I would like to ask you a few questions." The bailiff stated that his reply to this request was "I am only the bailiff. I cannot answer any questions, and there is nothing I can do for you. I can't talk to you." In denying the motion the trial judge commented that at the time this communication took place it was necessary for him to be absent from the courthouse, but that he had instructed the attorneys that there were two other judges in the building who would be available if a judge was necessary.

The court stated that even if the matters occurred in the worst light indicated in the affidavits "[I]t was incumbent upon counsel to ask that one of these judges, who it was made known to him were present in the building, be summoned for that purpose, for the jury to propound whatever question they had to him at that time. But this affidavit shows that no such request was made."

We believe the facts fairly support the conclusion that a juror inquired whether he could ask the bailiff a few questions and that no request for further jury instructions was made. Under these circumstances it is clear that the bailiff's statement that he was unable to answer such questions was proper, and defense counsel may not now be heard to complain about this procedure since he failed to avail himself of the opportunity of having one of the two available judges summoned to inquire into the matter.

Two cases principally relied upon by the defendant (*Foreman* v. *State* (Okla. Cr.), 370 P.2d 34, *Oien* v. *Bourassa,* 221 Ore. 359, 351 P.2d 703) have statutory bases peculiar to those States. In our State the rule has judicially evolved that a jury verdict will not be set aside where it is apparent that no injury or prejudice resulted from a communication to the jury either by the court or by third persons outside the presence of the defendant. (*People* v. *Berry,* 18 Ill.2d 453, 459; *People* v. *Tilley,* 411 Ill. 473, 478; *People* v. *Brothers,* 347 Ill. 530, 548; *Emme* v. *Pennsylvania Railroad Co.,* 29 Ill. App. 2d 97.) The recent Supreme Court decision of *Parker* v. *Gladden,* 385 U.S. 363, 17 L. Ed. 2d 420, 87 S. Ct. 468, does not in any way diminish the need for showing that the rights of a defendant were prejudiced by the acts of the bailiff. There, one of the jurors testified that she was prejudiced by the bailiff's remarks which were on one occasion "Oh, that wicked fellow [defendant], he is guilty", and on another "If there is anything wrong [in finding the defendant guilty] the Supreme Court will correct it." In holding that the bailiff's

statements constituted reversible error the United States Supreme Court said: "[w]e believe that the unauthorized conduct of the bailiff 'involves such a probability that prejudice will result that it is deemed inherently lacking in due process.' Estes v. State of Texas, 381 U.S. 532, 542-543, 85 S. Ct. 1628, 1633, 14 L. Ed. 2d 543 (1965). As we said in Turner v. State of Louisiana, supra, 'it would be blinking reality not to recognize the extreme prejudice inherent' in such statements that reached at least three members of the jury and one alternate member. 379 U.S., at 473, 85 S. Ct., at 550." (385 U.S. at 365, 17 L. Ed. 2d 423, 87 S. Ct., at 471.) We cannot accept the defendant's argument that we should reverse his conviction on the basis of *Parker,* for the extensive differences in the circumstances of the two cases are too evident to warrant further discussion. In the case presently before us there was neither an intent to influence the jury's decision nor the occurrence of any injury or prejudice to the rights of the defendant, and we find no cause for reversal on this score. See *Passons* v. *State,* 208 Miss. 545, 45 So. 2d 131; *State* v. *Lindsay,* 161 Iowa 39, 140 N.W. 903, 904; Annot. 41 A.L.R. 2d 227, 236-239.

Fourthly, defendant alleges that the trial court failed to instruct the jury on his theory of the case and gave confusing and erroneous instructions. The defense theory which defendant claims was not properly put before the jury by the instructions was that he lacked knowledge of the drugs that were found within his dominion and control, and he attacks the State's given instruction No. 10, because it failed to include knowledge as an element of the offense of possession. However, defendant overlooks the fact that no single instruction is required to state all of the relevant law on a given subject (*People* v. *Gilbert,* 12 Ill.2d 410), and when the State's instruction No. 10 and defendant's instruction No. 14, set out below, are read together, it is apparent that the court adequately instructed the jury:

"The court instructs the jury that a person commits the offense of Possession of a Narcotic Drug when he possesses or has under his control any narcotic drug." (State's instruction 10.)

"The court instructs the jury that in order for the defendant to have in his possession the object charged in the indictment, you must be convinced by the evidence and beyond a reasonable doubt that he *knowingly* had such objects in his possession. The word possession includes the exercise of dominion and control over the thing possessed." (Italics added.) (Defendant's instruction 14.)

A complaint similar to that raised here was rejected in *People* v. *Epping,* 17 Ill.2d 557, where the defendant suggested that the omission of the word "knowingly" from an instruction defining "accessory" made it possible for the jury to find the defendant guilty even though he innocently carried spurious warrants as a messenger. The conclusion of the court in *Epping* adequately disposes of Mills's fourth point: "The complained-of instruction cannot be considered and would not be considered by the jury except as one of a series of instructions, and the other instructions, together with the complained-of instruction, fully and accurately state the law applicable to this case. (*People* v. *Thompson,* 406 Ill. 323.)" 17 Ill.2d at 567.

We come now to the defendant's contention that the use of Clayton's testimony "sank far below minimum standards of decency and violated the defendant's right of Due Process" because the informer was paid on a contingent fee basis. Clayton testified that he was paid by the Vice Control Division of the Chicago Police Department according to the number of cases which he "made"; he was paid between $5 and $15 per case and he averaged between $20 to $30 per week while working as an agent for the police. While the phrase "make a case" was not clearly defined during the informer's testimony, it is apparent that the phrase did not mean that Clayton was paid only when his

efforts resulted in a conviction, since he testified that he was paid for securing evidence in the instant case before Mills was even brought to trial. Moreover, it seems clear that Clayton was not sent to the Corner Club tavern with the design of securing evidence leading to the conviction of defendant Mills, because Clayton testified that he had never seen the defendant prior to the afternoon in question and that he had to point out the defendant to the arresting officers when they entered the bar. The obvious conclusion to be drawn from this state of facts is that the Corner Club tavern was a place in which the existence of narcotics traffic was suspected by police who staked the informer there to watch for activities commonly performed by persons engaged in such trade. These facts distinguish this case from *Williamson* v. *United States* (5th cir.), 311 F.2d 441, relied upon by defendant, where the informer was paid a specified contingent fee by government agents for catching certain named suspects. The divided court there held, "Without some  *  *  *  justification or explanation, we cannot sanction a contingent fee agreement to produce evidence against particular named defendants as to crimes not yet committed." (311 F.2d at 444.) Actually, the contingent fee payment to Clayton for his activities leading to the arrest of Mills is wholly analogous to contingent fees paid to the informers in *United States* v. *Baxter* (6th cir.), 342 F.2d 773, *cert.* denied 381 U.S. 934, 14 L. Ed. 2d 699, 85 S. Ct. 1766, and *United States* v. *Costner* (6th cir.), 359 F.2d 969, where *Williamson* was distinguished and contingent fee payments condoned. In *Baxter* the court pointed out that the payments to the informers were made prior to trial and were not based on convictions, and we find that the same facts in the present case make the payments to Clayton a permissible procedure. In the present case as in *People* v. *Drumwright,* 48 Ill. App. 2d 392, the method of compensating Nathaniel Clayton was fully explored during the trial and we find it sufficient that "the informer's interest in

the litigation and his status were before the jury * * *." 48 Ill. App. 2d at 400.

We believe that contingent fee payments to informers in narcotics cases are not only permissible, but they may in fact be absolutely necessary to the continued viability of the whole informer system. Various commentaries have indicated that "Particularly in the enforcement of vice, liquor or narcotics laws, it is all but impossible to obtain evidence for prosecution save by the use of decoys." (Model Penal Code, sec. 210, comment, p. 16 (Tent. Draft No. 9, 1959).) "[T]he informer is a vital part of society's defensive arsenal." (*State* v. *Burnett,* 42 N.J. 377, 201 A. 2d 39, 44.) "Unfortunately for the prosecution, those of blameless lives are rarely chosen as companions by operators of 'dope rings'. Therefore, such persons seldom have opportunity to testify in prosecutions of this sort." (*Leyvas* v. *United States* (9th cir.), 264 F.2d 272, 277.) "[W]e feel that this right of full cross-examination [on reliability of an undisclosed informer] must give way in face of a compelling policy to protect informants in the stealthy and vicious traffic in narcotics." (*People* v. *McCray,* 33 Ill.2d 66, 72.) It is elemental that the narcotics informer is not usually a public spirited citizen who renders his services to improve the conditions of society. He is almost invariably a person who has gained first-hand knowledge of the pernicious activities of those involved in narcotics traffic, and his life is endangered every time he offers the police assistance in bringing the purveyors of illicit drugs to justice. The narcotics informer is frequently motivated by the goal of monetary reward, and if he were paid a uniform wage regardless of results, it would not be indulging in speculation to assume that his effectiveness would decline considerably. We find, therefore, that the type of contingent fee payment used in this case is not only legally permissible but realistically essential, and, at least in the circumstances of this case it must be condoned.

We come now to the defendant's contention that the evidence against him was insufficient in law and in fact to sustain the conviction. We do not agree. We may not substitute our judgment for that of a jury on questions involving the weight of the evidence or the credibility of the witnesses (*People* v. *Anderson*, 30 Ill.2d 413; *People* v. *Orlando*, 380 Ill. 107, *cert*. denied 317 U.S. 694, 87 L. Ed. 555, 63 S. Ct. 435), and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People* v. *Ashley*, 18 Ill.2d 272, *cert*. denied 363 U.S. 815, 4 L. Ed. 2d 1157, 80 S. Ct. 1255; *People* v. *Woodruff*, 9 Ill.2d 429.) There was no question in this case but that Chicago police officers found the cigarette package containing packets of heroin under the defendant's bar stool. It was admitted that this meant that the narcotics were, in legal contemplation, under the dominion and control of the defendant. The only question then is whether or not Mills had knowledge of the drugs that were under his control, and that depends on whether he took the cigarette package out from under the plastic covering of his stool, handled it, and then returned it to its hiding place. Nathaniel Clayton's testimony that the defendant did perform such acts stood uncontroverted before the jury. The facts that Clayton was an informer who was paid on a contingent fee basis, and that he had formerly been a drug addict were brought to the jury's attention. A full scope of cross-examination of Clayton was allowed to defendant's counsel, and the fact that the jury believed the informer's testimony is adequately established by the guilty verdict which they rendered.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.

Mr. JUSTICE SCHAEFER, dissenting:

The defendant moved to dismiss the indictment, (1) because it "does not allege, nor attempt to allege, that the defendant *'knowingly'*, possessed" the narcotic drug and (2) because "Knowledge is an essential element of unlawful possession of narcotics." The motion was denied. It was renewed after verdict and was again denied. Because I believe that the motion should have been granted, I am unable to concur in the judgment of the court.

In its brief the State reluctantly concedes that "knowledge is *probably* an essential part of the proof of the offense of unlawful possession of narcotics." (Emphasis supplied.) It contends, however, that "[s]ince this indictment was generally in the words of the statute, it needed state no elements of the offense which have been read into the statute by our courts." The problem in this case, however, is not whether an indictment must allege elements of an offense which have been read into the statute by the courts, but whether an indictment must comply with the requirements established by the General Assembly in the Code of Criminal Procedure.

Section 22—3 of the Criminal Code provides: "It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this Act." (Ill. Rev. Stat. 1963, chap. 38, par. 22—3.) The State's argument is that because section 22—3 does not in terms refer to knowing possession, the indictment need not charge that element of the offense.

But the sufficiency of the indictment is not to be determined by looking at section 22—3, or at the decisions of courts of other States under similar statutes. It is governed by the Illinois Code of Criminal Procedure, which explicitly states what an indictment must contain. Curiously, the opinion of the majority does not mention that statute.

Section 111—3 of the Code of Criminal Procedure

governs the content of a "charge", whether it is a complaint, information or indictment. It provides:

"(a) A charge shall be in writing and allege the commission of an offense by:

(1) Stating the name of the offense;

(2) Citing the statutory provision alleged to have been violated;

(3) Setting forth the nature and elements of the offense charged;

(4) Stating the time and place of the offense as definitely as can be done; and

(5) Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty." Ill. Rev. Stat. 1965, chap. 38, par. 111—3.

Prior to the enactment of the present Code of Criminal Procedure, the statute governing the form of an indictment had provided, "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." (Ill. Rev. Stat. 1959, chap. 38, par. 716.) The comments of the drafting committee concerning section 111—3 show that the change was deliberate: "(a) The charge must tell the accused the nature and cause of the accusation against him (Ill. Const. art. II, § 9). Two general methods of drafting the charge formerly existed. The offense could be charged in the language of the statute or the facts which constitute the crime could be set out. * * * Subsection (a) is designed to clarify and make uniform the method to be used in the charge. The five requirements will cover all situations and will satisfy the constitutional requirement." (S.H.A. chap. 38, § 111—3.) With the enactment of section 111—3 of the Code of Criminal Procedure, therefore, the practice

of charging offenses in the language of the statute became permissible only when the statute "* * * clearly and definitively sets forth all of the essential elements of the crime * * *." *People* v. *Patrick,* 38 Ill.2d 255, 258.

In the case before us section 22—3 does not set forth all of the elements of the offense with which the defendant was charged. Section 4—1 of the Criminal Code states, "A material element of every offense is a voluntary act * * *." (Ill. Rev. Stat. 1963, chap. 38, par. 4—1.) Section 4—2 provides: "Possession is a voluntary act if the offender knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have been able to terminate his possession." (Ill. Rev. Stat. 1963, chap. 38, par. 4—2.) The terms of the statute thus make knowing possession a material element of this offense.

The majority asserts that "the technical term 'possession' * * * is defined in section 4—2 of the Criminal Code to incorporate knowledge * * *." I can not agree. Section 4—1 states that a voluntary act is a material element of every offense, and section 4—2 explains when possession is a voluntary act. It says: "Possession is a voluntary act *if* the offender *knowingly* procured or received * * *." (Emphasis added.) To me this means that possession is *not* a voluntary act *unless* the offender *knowingly* procured or received the thing possessed. I can not, therefore, accept the majority's conclusion that "the term 'possession' used in the indictment implicitly meant *knowing* possession * * *."

While the issue of statutory construction must necessarily be discussed in technical terms, the underlying question is fundamental. The ease with which an innocent person could be framed by placing a packet of heroin in his overcoat pocket without his knowledge is obvious. As applied to the present case, if I were not satisfied that the indictment is fatally defective I would still be unable to hold that the defendant's guilt was established beyond a

reasonable doubt. What is shown is that the defendant went into a tavern, sat down on a bar stool, removed a small package from beneath the plastic cover of the bar stool, held the package in his hand and then put it back under the cover. This sounds just like what I would do if I became aware of a foreign object under the cover of a bar stool on which I was sitting. In this record there is no proof that the defendant put the package there, or was aware of its presence until he sat on it.

In my opinion the judgment should be reversed because the indictment failed to charge a material element of the offense, and I therefore find it unnecessary to consider the other questions discussed in the opinion.

Mr. JUSTICE KLINGBIEL joins in this dissent.