THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM RABE, Defendant-Appellant.

Fourth District No. 14179

Opinion filed October 28, 1977.

REARDON, J., specially concurring.

Richard J. Wilson and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul C. Komada, State's Attorney, of Charleston (Robert C. Perry and Marc D. Towler, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
Following two separate bench trials in the Circuit Court of Coles

County, defendant William Rabe was convicted of two separate offenses of delivery of a controlled substance (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(a)). Concurrent sentences of 1 to 3 years' imprisonment were imposed. Upon appeal, his sole contention is that the trial court erred in denying his consolidated motion to suppress evidence which he contends to have been obtained in violation of a statute which prohibits public officials from hiring detectives or investigators on other than a time basis and makes evidence obtained in violation of the statute inadmissible. We affirm.

The statute, approved June 21, 1929 (1929 Ill. Laws, at 347) states in its entirety:

> "No State, county or municipal officer, whose duty it is to investigate the commission of any crime or to prosecute persons accused of crime, shall employ any detective or investigator on a compensation basis other than that of time, and in no event shall compensation to such persons be contingent on the success of the investigation or prosecution. Evidence obtained in violation of this act shall be inadmissible in any court in this State for any purpose and any person employed in violation of this act shall be incompetent to testify in any such court as to any information or evidence acquired by him in such employment." Ill. Rev. Stat. 1973, ch. 38, pars. 201-51.

Both cases were tried upon an agreed statement of facts. The State's evidence showed that both deliveries occurred during sales arranged by Lonnie Piercy. The sales were made to agents of the Illinois Bureau of Investigation (IBI) who were introduced to defendant by Piercy. On one occasion, Piercy was present when the delivery was made and on the other occasion, he was in an adjoining room of his trailer. The issue on the motion to suppress was whether Piercy's relationship with the IBI violated the statute and thus tainted and made inadmissible the evidence relied upon for conviction. The evidence showed that Piercy had criminal charges pending against him and had agreed to work for the IBI in exchange for favorable treatment. He did so for about 1 year during which time he was paid about $3000, given a $50 car and a trailer of unstated value. IBI also paid his utility bills. Apparently he had no other employment. His payment came in small amounts usually after successful buys of drugs, set up by him, had been made by him or IBI agents. The largest portion of his time, however, was spent obtaining information of illegal drug activity and relaying the information to the IBI. He was informed that he should go from place to place to seek information about illegal activities. One agent testified that he had advised Piercy to "hustle" more and conceded that Piercy's work could be considered to be investigating.

Only three cases ruling directly upon section 1 of "An Act in relation to the employment of detectives or investigators by public officials" (Ill. Rev. Stat. 1975, ch. 38, par. 201—51) have been called to our attention. In *People v. Jones* (1966), 75 Ill. App. 2d 332, 221 N.E.2d 29, a man employed by police on a contingent basis and who had given reliable information in the past, told police of a place where narcotics were being sold. He accompanied the police to a place near the location he had described, then left the police and went by himself to the location. While mingling with persons there he found that a sale had been arranged. He then returned to the officers and gave them information by which the officers then arrested the defendant and found narcotics on his person. The court affirmed the conviction, ruling that the man who gave the police the information which led to the arrest was an informer and not an investigator or detective and that, therefore, the evidence was not tainted.

In *People v. Bryant* (1968), 101 Ill. App. 2d 314, 243 N.E.2d 354, Kenneth Fason had made arrangements to cooperate with the police in exchange for the dismissal of a pending narcotics charge subject to an understanding with Fason that charges might be reinstated. He was given money from time to time for food and rent. With regard to the case in question, Fason had informed police that he had learned that he could make a narcotics purchase. Officers then gave Fason a radio and accompanied him to a location near the place of the intended purchase. Fason then proceeded alone to the place, made the purchase, left and radioed the nearby police a description of the seller. They then proceeded to arrest the seller. In affirming the conviction and ruling that the statute had not been violated, the court reasoned that Fason was not an investigator or a detective but "a tool in the investigation being conducted by the police officers" (101 Ill. App. 2d 314, 321, 243 N.E.2d 354, 358). The court placed importance upon the fact that Fason's primary duties appeared to be to make controlled purchases and then to testify in court.

In *People v. Meachum* (1977), 53 Ill. App. 3d 762, 368 N.E.2d 400, an individual hired by a law enforcement group to make narcotic buys was ruled to be an informer and not an investigator or a detective.

In *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697, the Chicago Police Department had an arrangement with Nathaniel Clayton, a former narcotic addict and criminal probationer, whereby he became their agent and was paid by them on the basis of the number of cases he developed for them. On one occasion, the officers took Clayton to a place near a tavern where illegal narcotics activity was suspected and directed him to go into the tavern, watch for any suspicious activity and to periodically report to them while they waited. Clayton went into the tavern and came

out to report several times. The last time he came out, he told them of seeing an individual take a cigarette package from underneath the plastic cover on a bar stool. The officers then accompanied Clayton back to the tavern. He identified the defendant as the person who produced the cigarette package from under the cover of the stool. The officers then arrested the defendant and found heroin in one of his cigarettes. Although the case was decided after the decision in *Jones*, no reference was made in the opinion to the statutory prohibition against investigators and detectives who are paid on a contingent basis. Rather the defendant claimed that the use of Clayton on a contingent compensation basis deprived him of due process. The supreme court disagreed stating that "contingent fee payments to informers in narcotics cases are not only permissible, but they may in fact be absolutely necessary to the continued viability of the whole informer system." The court further stated:

> "It is elemental that the narcotics informer is not usually a public spirited citizen who renders his services to improve the conditions of society. He is almost invariably a person who has gained first-hand knowledge of the pernicious activities of those involved in narcotics traffic, and his life is endangered every time he offers the police assistance in bringing the purveyors of illicit drugs to justice. The narcotics informer is frequently motivated by the goal of monetary reward, and if he were paid a uniform wage regardless of results, it would not be indulging in speculation to assume that his effectiveness would decline considerably." 40 Ill. 2d 4, 18, 237 N.E.2d 697, 705.

The trial judge in the instant case concluded that in the ordinary sense, Piercy was both an investigator and a detective. He stated, however, that he did not think that Piercy's activity was substantially different from that in question in *Jones* and *Bryant* and denied the motion to suppress upon that basis. We agree and conclude that the opinions in those cases and the supreme court opinion in *Mills* indicate a strong public policy, arising from necessity, to permit contingent payments to persons who are "informers." To do this, it is necessary to give a narrow construction to the statute as was done in *Jones* and *Bryant*.

Defendant seeks to distinguish this case from *Jones* and *Bryant* because here the defendant was sent out to get information and admonished when he was not working hard enough to suit the IBI. In *Jones*, the informer did not merely tell an agent that a sale was likely to take place, but under police direction, he went with police to a location near the expected place of sale, mingled with the crowd at the expected place of sale and then returned to the nearby police officers to tell them what he had seen. In *Bryant*, Fason had a relationship with the police such that he was

obviously required to "hustle" to bring in information or else charges might be reinstated. He continually obtained information about how buys might be obtained.

■■■ The essence of *Jones* and *Bryant* is that the statute does not prohibit contingent compensation for those who are "informers." The term "informer" is not limited to one who serves as a decoy for a narcotics sale or who volunteers information to law enforcement officers. In discussing the question of whether the prosecution is required to furnish the names of "informers" to the defense, the United States Supreme Court stated in *Roviaro v. United States* (1957), 353 U.S. 53, 59, 1 L. Ed. 2d 639, 644, 77 S. Ct. 623, 627, "What is usually referred to· as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Webster's New International Dictionary (2d ed. 1938) defines an "investigator" as one who investigates and defines the transitive form of "investigate" as "1. To follow up by patient inquiry or observation, to inquire and examine with systematic attention to detail and relationship." Thus, one who merely gives information is an informer. One who not only obtains information, but examines that information with attention to detail and relationship is an investigator. The investigator not only provides but also evaluates information.

■■ The *Mills* opinion emphasizes the great need of law enforcement officials to use people with a criminal background to infiltrate the criminal element to obtain information about crime and that to do this, it is necessary to work with people likely to be unreliable. Piercy was such a person. It is clear from the opinions in *Jones, Bryant* and *Mills* that those informants were not trusted with other information available to law enforcement officials and were not asked to evaluate their information in relation to other available information. Thus, they were not investigators. In the same sense, Piercy was not an investigator but an informant.

Defendant states that the statute is intended to reduce the incentives to entrapment and perjury. In regard to the activities of people like Piercy, the opportunity to entrap occurs in the setting up and making of a sale and the opportunity for perjury occurs when the person assisting law enforcement is a witness to the alleged sale. In these phases of Piercy's work, he was in no different situation than the informers in *Jones* and *Bryant.* Piercy's situation is distinguishable, if at all, in that he spent a major portion of his time in obtaining bits of information and reporting it to the IBI. In these activities, he was subject to little or no incentive to entrapment or perjury. The legislative purpose of the statute offers no basis for distinguishing the cases.

We conclude that the decisions in *Jones, Bryant* and *Mills* indicate a

public policy to permit contingent compensation to be paid to informers with ties to criminal activity. Although the statute was not mentioned in *Mills*, the court stated, in the face of the existence of the statute, that such payments were permissible and necessary. In order to permit such payments, it is necessary to construe the statute narrowly. By such a construction, an informer can be considered to be one who gives information to law enforcement officials but is not trusted with evaluating that information with regard to other available information. In most situations where unreliable people with criminal connections are used as informants, their unreliability precludes law enforcement officials from entrusting the informants with any information or with making evaluations. Upon this definition, we conclude that Piercy was not an investigator or detective within the meaning of the Act.

The judgment is affirmed.

Affirmed.

WEBBER, J., concurs.

Mr. JUSTICE REARDON, specially concurring:

I concur specially in this decision since I am of the opinion that the teaching of *Jones*, *Bryant*, and *Mills* cannot be otherwise construed.

I am of the further opinion that we would be remiss should we fail to direct the attention of the legislature to this so-called "informers" statute for their review in the light of the reasoning employed in these decisions.