(No. 35227.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD A. EPPING, Plaintiff in Error.

*Opinion filed November 18, 1959.*

558

ROBERT H. RICE, of East St. Louis, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and J. WALDO ACKERMAN, JR., State's Attorney, of Springfield, (FRED G. LEACH, and WILLIAM H. SOUTH, Assistant Attorneys General, and ROBERT B. OXTOBY, Special Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Edward A. Epping was indicted in Sangamon County on certain charges arising out of his involvement in the office of Auditor of Public Accounts. His indictment, containing five counts, charged the defendant with obtaining the sum of $11,416 by means of confidence game; with forgery of a specified State warrant in the above sum payable to Elmer J. Bretz; with larceny based upon the general embezzlement statute; and counts 4 and 5 charged generally embezzlement by a public officer or his servant.

A jury trial resulted in four verdicts of guilty as to the charge of confidence game, forgery, larceny and embezzlement by a public officer or his servant. The court entered a judgment on the verdict of the jury, sentencing the defendant to a term of from one to 10 years on each of the four verdicts, the sentences to run concurrently. This writ of error is prosecuted to review the proceedings below.

The defendant assigns as error that the verdicts were not supported by the evidence, which was insufficient to find

the defendant guilty beyond a reasonable doubt. It is further urged as error that the trial court admitted certain testimony and excluded certain evidence to the detriment of the defendant. In addition to these suggestions of error, it is asserted that as a matter of law there is an inconsistency between the verdict finding the defendant guilty of forgery and verdicts relating to larceny and embezzlement, as well as an inconsistency between the verdict of larceny and embezzlement by a public officer.

In determining the merit of the assigned error that the evidence will not sustain a conviction, we have reviewed and find it necessary to relate the substance of the testimony of most of the witnesses.

The first witness for the prosecution, George Benicky, an employee in the office of the Auditor of Public Accounts as custodian of the vault, outlined the usual procedure followed in the Auditor's office in the processing of State warrants. This witness testified that in each instance a voucher is drawn designating the date, the amount and the named payee. In addition, the voucher contains information as to the warrant number, as well as the fund or appropriation from which the money is to be paid. The warrant is then prepared in the Auditor's office based on the voucher information and in most instances the warrants, at least for contractual services, are mailed to the named payee.

The warrant, signed by the Auditor and countersigned by the State Treasurer, and after being forwarded to the payee and processed by him through his regular banking channels, is returned by the bank to the Treasurer. The Treasurer pays and cancels the warrant, charging the same to the designated appropriation. The paid and canceled warrant is then returned to the Auditor's office and further processed, and eventually filed. Some 20,000 warrants are thus processed each day.

In the handling of these warrants microfilm copies are made and the originals are usually destroyed six years or

so after their date. The microfilm record is retained. This witness testified that the warrant which is the subject matter of the indictment here, was a State warrant and that he had searched for the original but was unable to find the same and produced a photostatic copy obtained from the microfilm. This particular warrant was shown to have been processed through the Southmoor Bank in Chicago and bore a typewritten endorsement: "For the deposit and credit of Elmer J. Bretz."

Lester R. Hart, of the State Treasurer's office, outlined the processing procedure in that office and testified that the indictment warrant had been paid by the State Treasurer. This witness, in addition to testifying that the instant warrant was paid with the typewritten endorsement, further testified and identified an exhibit, being a warrant paid by the State although it contained a typewritten endorsement.

Edward A. Hintz, another witness for the People, stated that he had been a vice-president and president of the aforementioned Southmoor Bank and Trust Company in Chicago; that he knew the defendant and his superior, the then Auditor of Public Accounts, Orville Hodge; and he testified that the indictment warrant had been processed through his bank; that the defendant had brought the warrant to the bank; that either he or his secretary had typed the endorsement, and that the money in payment thereof had been given to the defendant. This particular warrant was handled through an account known and referred to throughout the testimony as the "brown envelope account," which was an account through which some $1,303,000 was handled. This witness further testified that he handled this account and that he kept memoranda with reference thereto, and he then proceeded to enumerate instances relating to entries in this account wherein State warrants drawn to certain named payees were, with some variations, processed as was the indictment warrant, and that in most instances the defendant, Epping, is described as the person who pre-

sented the warrants, who obtained the cash and who in his frequent visits to the bank inquired as to the then balance of the so-called "brown envelope account." Except for a couple of instances, this witness testified that only the defendant or the then Auditor, Orville Hodge, delivered these warrants to him. He further stated that this brown envelope account was a personal account maintained by him, that it was not a matter of bank record, and he admitted that personnel in his bank under his direction cashed warrants marked for deposit. This witness, on cross-examination, established that the defendant took a total of some $196,000 in cash withdrawals from the account.

Several witnesses were called by the People who were identified as named payees in warrants that had been processed through the brown envelope account and they denied ever having received the warrant or the proceeds thereof, and such testimony was obtained from the payee of the indictment warrant. In most instances, the payees were established to have been persons who had done business with the State of Illinois and who had received State warrants in payment for their materials or services. A witness, Carolyn Marshall, secretary to the witness Hintz, testified that she typed the endorsement on the indictment warrant as well as on other warrants, her certainty with reference to establishing that she typed the endorsement on the indictment warrant being based upon her belief that she could identify the typewriter type.

Other personnel in the office of the Auditor of Public Accounts testified with reference to the instructions that they received from the defendant who was variously described as an administrative assistant, or executive assistant or the right-hand-man of the Auditor. One of these witnesses testified that she was directed by the defendant to prepare vouchers for the payment of certain sums without invoices and that these vouchers were, according to her instructions, taken to Harold DeSilva and he would pass

them for payment. DeSilva testified over the objection of the defendant as to a system and procedure whereby the expenses of the Auditor at his home at Lake Springfield during his tenure in office were all paid through the means of warrants payable to DeSilva.

It was established by this testimony that the defendant instigated and was instrumental in this use of State funds, the scheme being one wherein warrants payable to DeSilva would be obtained, be cashed and the money returned to the Auditor. The strenuous objection to the admissibility of this testimony and the documentary exhibits in support thereof is based upon the assertion by the defendant that the named payee was genuine and that it was intended that he receive the warrants and cash them, that he was the one who did receive, endorse and cash them, and that proof of the existence of this scheme would have no bearing upon the indictment here. This testimony and the documentary material was admitted as being an element to show guilty knowledge and criminal intent. Certainly it was established that the scheme with reference to the obtaining of money for the payment of personal expenses was similar to and almost identical with the scheme demonstrated to have been used in the indictment warrant and was admissible for its probative value. Financial crimes as complex and involved as this scheme are of a type that particularly lend themselves to proof of similar crimes by the defendant concurrently with the crime charged and are admissible to show specific intent or guilty knowledge. See *People* v. *Shaw,* 300 Ill. 451; *People* v. *Dougherty,* 266 Ill. 420; *People* v. *Duzan,* 272 Ill. 478.

Before concluding its case the People called the clerk of the circuit court of Sangamon County who read several conspiracy counts upon which the defendant was indicted in the circuit court of Sangamon County and the clerk then testified that the defendant had pleaded guilty to these charges. One of the indictments charged the crime

of conspiracy by the defendant, Hodge, and Hintz to obtain by false pretenses the sum of money here involved represented by the indictment warrant. This testimony was objected to by the defendant as being inadmissible, and he asserts that it was improper to show prior pleas of guilty in a criminal proceeding. It is true, as the defendant suggests, that, excluding matters relating to the habitual criminal, evidence of prior convictions ought to be carefully limited, for the law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime. Where, however, as here, the prior plea of guilty to the charge of conspiracy related to the same transaction as involved in the instant case, that prior plea was competent evidence as an admission germane to the issue and tended to prove the matters here involved, and the testimony by the circuit clerk was properly admitted particularly in view of the precautionary instruction by the court that the prior conviction on plea of guilty cannot be considered as tending to prove that it was likely or probable that the defendant committed the offense charged in the indictment.

After the testimony of the circuit court clerk was received, the defendant attempted to explain his plea of guilty as entered in the prior proceedings and this was, at that point of the proceedings, excluded; but a careful review of the entire record leads us to the conclusion that the prior plea of guilty was, in fact, explained by the defendant in the course of his testimony. For instance, at one point in his testimony the defendant asserted that his actions were dictated by his loyalty to the former Auditor of Public Accounts; again in the course of his testimony, at another point, the defendant asserted that he was a participant in changing State records and in concealing the same because of that loyalty and for the further reason that he was not going to jump on Hodge as he believed everyone else was then doing. Indeed, the defendant often asserted that his

conduct with reference to the matters to which he had previously entered a plea of guilty was, in fact, predicated upon his conception of loyalty to his then employer.

The rule is that evidence of a prior admission relating to and being specifically germane to the issue here involved having been admitted in evidence, the defendant may be permitted to explain the facts and circumstances of such admission, but we do not feel that the defendant in this case was denied such right even though his specific attempt, unaccompanied by an offer of proof, was excluded at one point in the proceeding.

In any event, however, it is well established that the exclusion of the testimony cannot here be considered as error in the absence of an offer of proof. (*People* v. *Langzem,* 307 Ill. 56; *People* v. *Rosenbaum,* 299 Ill. 93.) See also *People* v. *Clark,* 9 Ill.2d 400, as to the sufficiency of an offer of proof.

The trial court permitted the State to make inquiry of the defendant as to his interest in a certain corporation which owned an apartment building in Springfield. This testimony was received over the objection of the defendant and it is now suggested that this evidence was improper. The testimony thus elicited is unconvincing as to any connection between the offenses here charged and the interests of the defendant in the corporation. The evidence was, therefore, immaterial and, as such, should have been excluded. We fail to see, however, and defendant fails to suggest, wherein the receipt of that testimony, even though immaterial, would operate to inflame or prejudice the jury. Indeed, we do not see that the testimony would have any bearing whatsoever on the issues here presented for determination, and the admission of such testimony does not constitute reversible error.

The defendant further makes complaint of a given instruction defining "accessory" because the word "knowingly" is omitted from that instruction. It is suggested by the

defendant that this omission made it possible for the jury to find the defendant guilty even though he innocently carried spurious warrants, much as an innocent messenger. The complained-of instruction is in the language of the statute and the instruction has been often approved by this court. (*People* v. *Lee,* 237 Ill. 272; *People* v. *Everett,* 242 Ill. 628.) The complained-of instruction cannot be considered and would not be considered by the jury except as one of a series of instructions, and the other instructions, together with the complained-of instruction, fully and accurately state the law applicable to this case. (*People* v. *Thompson,* 406 Ill. 323.) One of the given instructions specifically required that the jury find that the intent alleged in the indictment be shown, and we find no error in the instructions as given.

A case such as this necessarily involves complex testimony and documentary exhibits. Proof of financial crimes on the scale such as the one here unfolded makes it probable that certain of the testimony can be viewed as based upon incredible circumstances, but a careful examination of all of the testimony here leads us to the conclusion that, incredible as the scheme may have been in dealing with the complexities of State finances, although the scheme itself was basically simple, there was more than enough evidence in the record from which the jury could properly conclude that the defendant was guilty as charged, and the verdict cannot be disturbed here unless it is so contrary to the evidence or so unreasonable, improbable or unsatisfactory as to justify this court in entertaining a reasonable doubt as to the defendant's guilt. We find no basis in this record to disturb the verdicts of guilty. *People* v. *Woodruff,* 9 Ill.2d 429.

We next turn to the assertion by the defendant that the verdicts cannot stand as being inconsistent or for the further reason that certain legal impairments exist. First, it is suggested that in order to be guilty of the crime of con-

fidence game there must be a victim whose confidence is obtained and betrayed and that the record here does not demonstrate the existence of such a victim. The State of Illinois, a body politic, can repose confidence in its employees, agents or servants, and it is no bar to a prosecution for the crime of confidence game that the victim is either a public or private corporation, and the suggested technical distinction is without merit. See *People* v. *Gibbs,* 413 Ill. 154.

Passing now to the merit of the contention that the evidence fails to establish that the indictment warrant was a forgery, it is contended by the defendant that the named payee did, in fact, exist and that the name of the payee typed on the back of the instrument did not constitute an endorsement and, hence, there can be no forgery. This is based upon a portion of the Negotiable Instruments Act which the defendant construes as requiring an endorsement under the hand of the named payee.

Section 105 of division I of the Criminal Code (Ill. Rev. Stat. 1957, chap. 38, par. 277,) provides that every person who shall falsely make, alter, forge or counterfeit a warrant for the payment of money at the Treasury or who shall utter, publish, pass or attempt to pass as true and genuine any such false, altered, forged or counterfeited warrant with knowledge thereof with intent to prejudice, damage or defraud any body politic, shall be deemed guilty of forgery. It seems clear from the evidence in this case that at the time the warrant was prepared and drawn it was made payable to a named payee who, by reason of services rendered, was entitled to payment from the State. It is uncontroverted, however, that the indictment warrant was prepared under the supervision of the defendant, endorsed as indicated and then uttered or passed with intent to defraud a body politic. The definition of "forgery" as contained in our statute does not limit the crime of forgery to an act of endorsing, by forgery, a signature on an instru-

ment in compliance with the Negotiable Instruments Act. (*Anson* v. *People,* 148 Ill. 494; *People* v. *Meyer,* 289 Ill. 184.) The test of an endorsement in a forgery trial is not its legal sufficiency to constitute a valid endorsement under the Negotiable Instruments Act but, rather, the inquiry is to ascertain whether the endorsement renders the instrument capable of defrauding and is made for that purpose. If so, the other elements being present, it is forgery. *Weston* v. *Myers,* 33 Ill. 424; *People* v. *Brown,* 397 Ill. 92.

The embezzlement count of the indictment, count 3, is based upon section 74 of division I of the Criminal Code, and that count alleges that a certain Auditor's warrant was fraudulently embezzled and converted to the defendant's use. Counts 4 and 5 are based upon section 80 of division I of the Criminal Code relating to embezzlement by a public officer or his servant. As to count 3, the defendant was convicted of larceny as prescribed by the statute. It seems clear from the evidence that the warrant was properly in the possession of the State of Illinois by and through its agents, and that it was prepared and wrongfully used by the defendant and wrongfully taken from the State of Illinois and fraudulently converted, and the proceeds thereof were appropriated by the defendant, being a public officer or his servant. This case is not one involving a fraudulent and fictitious instrument but, rather, involves an instrument, seemingly valid on its face, that was embezzled under the statutory definition, that was falsely forged, and then fraudulently uttered, and we find no repugnancy between the separate verdicts of the jury.

The record before us contains nothing that would suggest that the defendant did not receive a fair trial. The record appears to us to be free from prejudicial error.

The judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*