THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JERRY POOLE, Defendant-Appellant.

Fourth District    No. 16895

Opinion filed September 3, 1981.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, Mike Southworth, law student, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and James K. Horstman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Following a trial by the court sitting without a jury in the circuit court of McLean County, the defendant was adjudged guilty of the offenses of home invasion, burglary, and battery in violation of sections 12—11, 19—1, and 12—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, pars. 12—11, 19—1, and 12—3). The prosecution was commenced by

information on June 24, 1980, and later, on July 10, 1980, a grand jury returned indictments against the defendant for the same offenses.

On appeal, defendant raises the sole issue of reasonable doubt, and we reverse.

Katherine Alexander testified for the State and said that on June 14, 1980, at about 2 a.m. she was asleep in her apartment at 716 Arcadia in Bloomington. The apartment building contained approximately 20 units on two floors. Hers was No. 2. At about the time indicated, she was awakened by an intruder striking her on her head. The intruder then left her bedroom, and she arose and locked the bedroom door. She had no further recollection except that of calling the police. Police records indicated that the call was received at 2:51 a.m. Alexander was unable to identify the intruder. She did further recollect on cross-examination that after the bedroom door had been locked, the intruder tried to reenter the bedroom by rattling the doorhandle and bumping against the door.

An inventory of the apartment revealed that a camera which had been kept in a living room closet, and $15 from a billfold were missing. A subsequent search of defendant's residence did not produce the camera.

The principal evidence against defendant was a single fingerprint which was found on the exterior door of apartment No. 2. It was stipulated that this was defendant's print, and it was found about 12 inches above the door handle on the exterior side of the door which opened into the common hallway of the apartment building. In addition to the print, there were some splotches on the exterior aspect of the door which Alexander testified she did not place there. Further evidence indicated that at the time of his questioning by the police on June 23, 1980, defendant had cuts on his hands. He stated that he did not know how he got them. There was also a pry mark on the apartment door.

Two police officers testified for the State concerning fingerprints. One of them, who was involved with the exterior door, stated that he could not tell how long the print had been there. He also testified that he did not dust the entire door, nor the door handle for additional prints. The second officer testified that he had dusted the inside of the bedroom door of Alexander's apartment, the headboard of her bed, and her nightstand, and that no fingerprints were found. He did not dust the door of the closet in which the camera was kept.

During the questioning by the police, defendant had admitted being in the apartment building on prior occasions, but at apartments Nos. 9 and 19, which are located at the opposite end of the building from Alexander's apartment No. 2. It was also established that defendant's residence was about one block from 716 Arcadia.

Defendant did not testify, but presented three alibi witnesses whose stories were inconsistent.

From the foregoing recapitulation of the evidence it can be seen that the State's case must stand or fall upon the presence of the single fingerprint of defendant found on the exterior of the hallway door of apartment No. 2. While affording great deference to the capable trial judge who sat as the trier of fact, nevertheless we feel that this evidence, even with the inferences to be drawn from it, is insufficient to sustain his judgment.

■■■ Fingerprint evidence is circumstantial evidence which attempts to connect the defendant to the offense charged. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222.) It is well established that a conviction may be sustained solely on fingerprint evidence when the fingerprints of the defendant are found in the immediate vicinity of the crime under such circumstances as to establish beyond a reasonable doubt that the finger-prints were impressed at the time the crime was committed. (*Malmenato.*) A defendant's conviction based upon fingerprint evidence may be upheld where the unexplained presence of the defendant's prints is not consistent with any reasonable hypothesis of innocence. (*People v. Taylor* (1965), 32 Ill. 2d 165, 204 N.E.2d 734.) These principles were advanced and affirmed again by the supreme court quite recently in *People v. Rhodes* (1981), 85 Ill. 2d 241, 422 N.E.2d 605.

In *Rhodes*, the court considered three separate cases involving convictions based upon fingerprint evidence. In that case, the defendant Rhodes' fingerprints were found on glass fragments from a broken-out backdoor which was the point of entry during a burglary. The glass fragments were found about 6 to 8 inches from the backdoor, or point of entry. In one of the companion cases, *People v. Van Zant*, the defendant's fingerprints were found on a clock-radio inside the burglarized house. In the third companion case, the fingerprints of a juvenile were found on glass fragments broken out of a garage window, which was the point of entry. A police investigator was unable to say whether the print was impressed the day of the burglary, although he was able to say that the print was fresh since it contained oil which the body emits. The supreme court upheld all three convictions, finding that there were no reasonable hypotheses to explain the defendants' fingerprints found at the scene of the crimes. The court concluded that in all three cases, the fingerprints could only have been impressed at the time of the offense. The common trend among the three cases appears to be that the prints were found in locations not accessible to the public, nor was there any evidence that the defendants had been at the crime scene any time previous which would explain the presence of their prints.

None of these elements is present in the instant case. In *Rhodes*, the supreme court spoke of "fresh" fingerprints; in this case, there is no

evidence as to when the print was made; indeed, the evidence is to the contrary, the officer having testified that it was impossible to determine when it was made. Unlike the three cases considered in *Rhodes*, the print here was in a public place and there is direct evidence that the defendant had been present in the building on a previous occasion.

Prior appellate decisions have established that when it is impossible to determine when a fingerprint was impressed, and when it is possible that the print might have been impressed at a time unrelated to the offense, a reasonable doubt exists as to the defendant's guilt. *People v. Donahue* (1977), 50 Ill. App. 3d 392, 365 N.E.2d 710; *People v. Ware* (1980), 82 Ill. App. 3d 297, 402 N.E.2d 762.

In addition, there is other circumstantial evidence in this case indicating when the print might have been made. At trial, defense counsel argued that it was done on the previous day when apartment No. 1 across the hallway had been entered. The People objected to this argument and on appeal maintain that there is no evidence of the other breakin. We disagree. The record indicates that defense counsel interrogated the police officers about a burglary in apartment No. 1 on June 13, 1980. Also, there is in the record a transcript of the grand jury proceedings in which the occupant of apartment No. 1 testified as to the breakin at her apartment, and stated that she had identified the defendant in the instant case as the offender. The possibility exists that the print was made at that time, apartment No. 1 being directly across the public hallway from apartment No. 2.

> "In cases where the proof is entirely circumstantial, if there is any reasonable hypothesis arising from the evidence, consistent with the innocence of the defendant, it must be adopted. It is essential to a conviction upon circumstantial evidence that the facts proved be not only consistent with the defendant's guilt, but that they be inconsistent, upon any reasonable hypothesis, with his innocence. [Citation.]" *People v. Wilson* (1948), 400 Ill. 461, 473, 81 N.E.2d 211, 217.

■■ We conclude that the evidence here "creates a strong suspicion that defendant may have been connected with the offenses, but this does not establish his guilt beyond a reasonable doubt." *People v. Ivy* (1979), 68 Ill. App. 3d 402, 406, 386 N.E.2d 323, 326.

The judgment of conviction by the circuit court of McLean County is therefore reversed.

Reversed.

MILLS and LONDRIGAN, JJ., concur.