THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DIONISIO BROZAN, Defendant-Appellant.

First District (2nd Division)   No. 85—2990

Opinion filed October 27, 1987, *nunc pro tunc* April 21, 1987.

Louis B. Garippo and Susan G. Feibus, both of Louis A. Garippo, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Christopher J. Cummings, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Following a bench trial, defendant appeals his convictions for insurance fraud, fraudulent application for a motor vehicle title, theft, theft by deception, forgery, and conspiracy. (Ill. Rev. Stat. 1981, ch. 38, pars. 8—2, 16—1(a)(1), (b)(1), 17—3(a)(1), (a)(2); ch. 73, par. 1101; ch. 95½, par. 4—105(a)(5).) He claims on appeal that: he was not proved guilty beyond a reasonable doubt; evidence of his attempted purchase of another auto nine months after the purchase of the subject auto denied him a fair trial; and admission of other crimes evidence against his codefendant was prejudicial.

In May 1982, defendant Dionisio Brozan, owner and operator of International Tours and Travel, Inc., and Roma International Driving School, met a friend and former employee, Peter Sherovski (also referred to as Serafsky), who also owned a driving school. Sherovski showed defendant his recently purchased Mercedes Benz. After driving the car, defendant expressed an interest in obtaining a Mercedes.

In June 1982, Sherovski contacted defendant concerning such a purchase and met him in a bar, where he introduced Dusan Pavlovic (codefendant) to defendant. Defendant test drove a 1980 blue-green Mercedes and the three men discussed the purchase of the car. Two or

three days later, defendant and Pavlovic agreed on a $32,000 purchase price. On June 26, 1982, they went to the Midwest Bank, where defendant filled out a loan application after speaking to bank vice-president James McMahon. Defendant stated he paid Pavlovic $7,000 in cash and Pavlovic signed over to him the title to the car. On June 29, 1982, the bank approved a loan of $25,000 to defendant for the purchase of a 1980 Mercedes 450 SEL.

Craig Dearing, a field service manager for Mercedes Benz of North America, testified that every Mercedes is manufactured in West Germany and contains a vehicle identification number (VIN). Mercedes records indicate that it did not manufacture an automobile with the VIN number attached to the 1980 Mercedes purchased by defendant. VIN numbers can be physically altered but are not changed in the normal course of business. Dearing had heard of VIN numbers being altered on "gray" market cars which are not designed to meet American standards but are shipped to another country before being brought into the United States. This is done to make them appear legal when privately brought into the United States. Detective Michael Micetic of the Chicago police auto theft section testified that stolen cars sometimes have had their VIN numbers changed. Carl Phillips, an employee of Loeber Motors, testified that the VIN number on defendant's 1980 auto resembled a *bona fide* Mercedes VIN number. A Florida police detective, testifying for the State, was aware that false VIN numbers were sometimes put on Mercedes autos and, when a title paper was prepared consistent with the altered VIN number, he could not tell whether the title document was genuine or not.

The title history of the 1980 Mercedes indicated it was originally imported from Colombia. A Mercedes with the VIN number attached to defendant's auto possessed an Ohio vehicle title issued June 23, 1982, in the name of Dusan Pavlovic, 194 Morse Road, Columbus, Ohio. The parties stipulated that David Johnson, a Columbus, Ohio, letter carrier, would testify that there was no such address as 194 Morse Road in Columbus since at least February 21, 1981, when he was assigned the Morse Road route. An Ohio certification for the car describes a 1980 four-door Mercedes 450 SEL with the VIN number of defendant's auto. That certification indicates that defendant's auto, bearing the altered VIN number, was inspected by an Ohio Bureau of Motor Vehicles employee and certified before defendant's purchase.

After the loan was approved, defendant registered the car in his name, obtained license plates, and paid Pavlovic $6,500 in cash. Pavlovic wanted payment completely in cash. Defendant deposited the loan check in his own account, gave Pavlovic either $8,000 or $9,000 in

cash on July 1, 1982, and paid the remaining $10,000 in two installments to a man Pavlovic sent to him after telephoning instructions. Defendant secured no receipts for his cash payments.

Defendant obtained an insurance policy for the 1980 Mercedes in July 1982 with Wausau Insurance Company, which gave him the highest possible coverage for personal injury, uninsured motorist and medical payments. Defendant noted that his Mercedes lacked a spare tire, jack and tool kit; he purchased them at Loeber Motors in summer of 1982. He also had the front end of the car aligned there. He had receipts for these expenditures. That same month defendant took the Mercedes to the North Oak Chrysler dealership for a State-required physical inspection of the auto. John Kohut, Chrysler manager, remembered verifying the VIN number of a light green Mercedes brought there by defendant. That summer two employees and a former business partner of defendant saw him with a Mercedes of similar color on a number of different occasions. An Illinois title to the Mercedes in defendant's name was issued on September 28, 1982.

On the evening of October 9, 1982, defendant met with a friend at a Kenosha, Wisconsin, restaurant, arriving in his Mercedes around 8:30 p.m. He parked his car near the front of the restaurant, had dinner with his friend, and they talked for approximately two hours. When they left the restaurant at about 10 p.m. or 10:30 p.m., the Mercedes was missing. Defendant called the police, described his car, and was informed by them that if the Mercedes was not recovered within two hours it would be difficult to locate. Defendant then hitch-hiked a ride to Chicago, something he normally did not do. Defendant checked with the Kenosha police the next day and made a theft report to Wausau Insurance Company. He cooperated with the insurance investigation and received full payment within 70 days.

On November 11, 1982, police in Oakland Park, Florida, arrested Pavlovic and obtained a search warrant for his residence there. Police found both blank and completed Michigan titles for vehicles, aluminum type plates with VIN numbers for Mercedes cars and an addressograph machine that could reproduce the numbers. One such Michigan Mercedes title bore the VIN number and description of defendant's 450 SEL four-door 1980 Mercedes.

In March 1983, in response to defendant's desire to buy another car, Sherovski came to his office and introduced one Branco Savic to him. On March 15, defendant test drove a two-door light yellow 1979 Mercedes brought by Savic, which he agreed to buy for $22,000. Defendant paid Savic $5,000 in two checks dated April 2, 1983, and Savic signed over title to defendant. On March 31, 1983, the Midwest

Bank approved a loan of $18,000 to Brozan and International Tours and Travel to purchase a Mercedes with a specified VIN number. Savic stated he would need the car in Minnesota and defendant let Savic take the Mercedes.

Fred Shore, a bank loan officer, called defendant and wanted to see the Mercedes; however, Savic never returned the car to defendant. The bank recalled its loan in July. On June 12, 1983, Detective Micetic interviewed defendant concerning the 1980 Mercedes and notified him that a criminal investigation was in progress. Defendant never received his $5,000 back from Savic or from Sherovski, who offered to help try to recover defendant's money.

Records for a Mercedes with defendant's 1979 VIN number indicate that the number belonged to a 1972 brown Mercedes 450 SL. The title history shows the 1979 Mercedes was also imported from Colombia. A Michigan title was issued to Jovan Matejev, 2936 Gerison Drive, Sterling Heights, Michigan. The parties stipulated that Petre Daikovski would testify that he lived at 2936 Garrison Drive, Sterling Heights, Michigan, since May 1981 and never knew a Jovan Matejev or gave him permission to use that address. An Illinois title was issued to Branco Savic of 8417 South 78th Avenue, Bridgeview, Illinois. Dragica Nicolic, who resided at 8421 South 78th Avenue, Bridgeview, Illinois, testified she was asked by Peter Sherovski in August 1982 to let Branco Savic receive mail at her address, to which she agreed. She took any mail for Savic she received to Sherovski.

Defendant was indicted on November 9, 1983, on one count each based upon the violations first noted. Defendant and Pavlovic were tried together at a bench trial and both were found guilty on all counts on July 1, 1985. The circuit court concluded:

> "As to [defendant] Mr. Brozan, all the evidence produced in this case, the story of the Wisconsin theft of what I believe to be a non-existent car, is preposterous, and untrue, and it is untrue because no car was ever stolen in Wisconsin because no such car was ever manufactured or possessed, manufactured by Mercedes or possessed by Mr. Brozan."

On September 10, 1985, the circuit court sentenced defendant to concurrent terms of 30 months' probation on six counts excluding the conspiracy counts, with periodic imprisonment for six months and restitution of $33,284 to the insurance company. Defendant appeals.

■■ ■ Defendant first contends that he was not proved guilty beyond a reasonable doubt because he presented evidence that he had legitimately purchased the 1980 Mercedes which he insured, and that his receipt of proceeds therefore was not fraudulent or illegal.

The State asserts the overwhelming evidence shows that defendant defrauded the insurance company with a claim for a nonexistent car, citing the fictitious address on the Ohio title, the fictitious VIN number of the 1980 Mercedes and the strikingly similar fictions concerning the 1979 Mercedes.

Defendant's account of his transactions may be interpreted as dubious, as the circuit court remarked. These included the series of cash payments to Dusan Pavlovic and a person whose first name he remembers as "Bobby," without requesting any receipts. Defendant testified he often had dealings in cash with immigrants, however. His narrative of his Kenosha trip, in which he, as an established businessman, would hitchhike a ride to Chicago at 11 p.m. at night, when he did not hitchhike normally, may have appeared doubtful, but not necessarily implausible.

There was no evidence linking defendant with the fictitious address on the Ohio title, which had been certified by Ohio officials, that was signed over to him by Pavlovic for the 1980 Mercedes auto. A police detective assigned to such cases could not tell by looking at it whether the title document was genuine or not. Nor was there any evidence of defendant's having tampered with the 1980 Mercedes VIN number. Defendant points to the high insurance coverage he purchased for personal injury, uninsured motorist coverage and medical payments as superfluous if part of a scheme to defraud. He maintains that the existence of the 1980 Mercedes was proved by the photographs introduced and the testimony of defendant's independent witnesses, as well as acquaintances, that they saw defendant with a Mercedes auto, although Detective Micetic testified that one example of insurance fraud involved using a "show car" with a changed serial number to display to friends or insurance personnel. Nevertheless, the prosecutor, in closing argument, noted that "[w]ith respect to the first vehicle involved, the '80 Mercedes, I think the State will concede that in and of itself it would appear that Mr. Brozan [was] an innocent purchaser." We agree.

A reviewing court will not reverse a circuit court's determination of the sufficiency of the evidence unless the evidence is so improbable as to create a reasonable doubt of guilt. (*People v. Hall* (1986), 114 Ill. 2d 376, 410, 499 N.E.2d 1335. See *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) The trier of fact can best determine the credibility of witnesses and the weight to be given their testimony. (*People v. Locascio* (1985), 106 Ill. 2d 529, 537, 478 N.E.2d 1358.) A reviewing court does not reweigh the facts. (*People v. Hosty* (1986), 146 Ill. App. 3d 876, 885, 497 N.E.2d 334.) When a defendant attempts to explain

incriminating circumstances he must provide a reasonable account or be judged by its improbabilities and inconsistencies. *People v. Lester* (1986), 145 Ill. App. 3d 720, 738, 495 N.E.2d 1278.

■ The State's case against defendant, based upon an allegedly phantom automobile, the theft of which gave rise to defendant's fraudulent receipt of insurance proceeds, is entirely circumstantial; however, any reasonable hypothesis consistent with his innocence must be adopted. The evidence presented must be consistent with defendant's guilt and also must be inconsistent with his innocence. (*People v. Wilson* (1948), 400 Ill. 461, 473, 81 N.E.2d 211; *People v. Scribner* (1982), 108 Ill. App. 3d 1138, 1143, 440 N.E.2d 160; *People v. Poole* (1981), 99 Ill. App. 3d 939, 942, 426 N.E.2d 306.) Although it may be said that the evidence adduced by the State creates a suspicion of wrongdoing by defendant, it does not prove his guilt beyond a reasonable doubt and his conviction must be reversed. *People v. Williams* (1986), 140 Ill. App. 3d 784, 787, 489 N.E.2d 28; *People v. Poole* (1981), 99 Ill. App. 3d 939, 942, 426 N.E.2d 306; *People v. Ware* (1980), 82 Ill. App. 3d 297, 307, 402 N.E.2d 762; *People v. Versher* (1977), 52 Ill. App. 3d 148, 151, 367 N.E.2d 311.

■ The admission of substantial evidence concerning the 1979 Mercedes denied defendant a fair trial. There were no significant similarities between the two transactions. Defendant never obtained physical possession of the 1979 Mercedes; he did not file an insurance claim for its theft; he acquired it from a different seller; he paid by cash as requested in one instance, and by check in the other; and no connection was established between the two transactions. The circuit court gave no explanation of the basis for its ruling in admitting the 1979 Mercedes evidence.

■ Evidence of other crimes is admissible if relevant to prove intent, absence of mistake, design, plan, identity, motive or *modus operandi*. (*People v. Adams* (1985), 109 Ill. 2d 102, 121, 485 N.E.2d 339, *cert. denied* (1986), 475 U.S. 1088, 89 L. Ed. 2d 703, 106 S. Ct. 1476; *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145.) Evidence of other offenses is also admissible if relevant to establish any material fact. (*People v. Stewart* (1984), 105 Ill. 2d 22, 62, 473 N.E.2d 840, *cert. denied* (1985), 471 U.S. 1131, 83 L. Ed. 2d 283, 105 S. Ct. 2666.) Using evidence of another crime requires some threshold similarity to the offense charged, however. (*People v. Bartall* (1983), 98 Ill. 2d 294, 310, 456 N.E.2d 59.) The probative value of other crimes evidence must be weighed against its prejudicial effect. (*People v. Stewart*, 105 Ill. 2d 22, 62, 473 N.E.2d 840; *People v. Wright* (1986),

140 Ill. App. 3d 576, 579, 488 N.E.2d 1344.) A reviewing court will not overturn a circuit court decision to admit such evidence absent an abuse of discretion. *People v. Johnson* (1986), 143 Ill. App. 3d 34, 45, 492 N.E.2d 574; *People v. Wright* (1986), 140 Ill. App. 3d 576, 579, 488 N.E.2d 1344.

■ The threshold similarity of the evidence regarding the 1979 Mercedes and the 1980 Mercedes is claimed by the State as having been met by both cars' having out-of-State titles with false addresses, both cars having incorrect VIN numbers, both cars having been imported from Colombia, and by defendant both times being introduced to a seller he did not previously know by Peter Sherovski. The State asserts the evidence concerning the 1979 Mercedes indicated a common plan or scheme as well as intent and the absence of mistake. As the evidence reveals, however, no connection was made by the evidence of defendant's involvement in securing out-of-State titles with false addresses or tampering with fictitious VIN numbers for either auto. There was no suggestion of his involvement with their importation from Colombia. That he was introduced to different sellers of each car by the same person is insufficient as a basis for reliance upon this evidence.

■ Although complex and involved financial crimes are particularly susceptible to proof that a defendant committed similar offenses, and such proof is admissible to show intent or guilty knowledge (*People v. Hoffman* (1986), 146 Ill. App. 3d 823, 831, 497 N.E.2d 366; *People v. Peebles* (1983), 114 Ill. App. 3d 684, 690, 449 N.E.2d 230; see *People v. Epping* (1959), 17 Ill. 2d 557, 564, 162 N.E.2d 366), such evidence is not admissible unless it is shown that a crime actually occurred and that defendant committed it or participated in its commission. (*People v. Mitchell* (1984), 129 Ill. App. 3d 189, 197, 472 N.E.2d 114; *People v. Gugliotta* (1980), 81 Ill. App. 3d 362, 365, 401 N.E.2d 262.) That evidence is absent here.

In light of our reversal of defendant's conviction, we need not address the claim that the admission of extensive other crimes evidence against codefendant Pavlovic regarding the search of the latter's residence in Oakland Park, Florida, and the seizure of items concerning title applications and VIN numbers also denied defendant a fair trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

STAMOS and BILANDIC, JJ., concur.