THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOE LEE WHITE, Defendant-Appellant.

Second District   No. 2—91—1204

Opinion filed February 17, 1993.

Theodore Gottfried, Charles M. Schiedel, and Jon E. McPhee, all of State Appellate Defender's Office, of Springfield, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Joe Lee White, was convicted of home invasion (Ill. Rev. Stat. 1991, ch. 38, par. 12—11(a)(2)), robbery (Ill. Rev. Stat. 1991, ch. 38, pars. 18—1(a), (b)), and aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(10)). He was sentenced to concurrent prison terms of 40, 30, and 5 years, respectively. On appeal, defendant contends that the State did not prove him guilty beyond a reasonable doubt, that error occurred in the trial court's comments on weight accorded expert fingerprint testimony, that no evidence was entered as to the age of the victim as required for the two crimes in which the victim must be age 60 years or older, that the defendant's conviction of aggravated battery is barred under the one-act, one-crime doctrine, and that defendant was denied due process of law where an extended-term sentence was imposed based on the aggravating factor of victim's age when no evidence of age had been presented. We affirm in part, modify in part, vacate in part, and remand to the trial court for resentencing.

Margaret and Harry Lauritson were residents of Waukegan and were away from their home on July 4, 1991. James Christensen, a long-time boarder in the residence, was house sitting in their absence. Around 9:15 p.m., Mr. Christensen was sitting in the downstairs living room watching television. He heard a noise on the front porch and got up to see what was the source of that noise. A man rushed in and struck him hard in the chest, knocking him to the floor and knocking off his glasses. The man grabbed Christensen's wallet and left. The incident happened in less than 30 seconds.

Shortly after the crime, evidence technician Thomas Ambrose dusted for fingerprints. He lifted a latent fingerprint from the inside of the outer front door of the enclosed front porch of the Lauritson home. The following day, in a matter unrelated to Christensen's robbery, Waukegan police officer Elaine Delaney took inked fingerprints of the defendant Joe Lee White.

On July 7, Detective Paul Hendley showed Christensen two photographic lineups. One of those lineups contained a picture of defendant. Christensen responded that he would not be able to identify the man who attacked him, because his glasses had been knocked off and, according to the record, "everything happened so fast."

On July 11, Investigator Donald Verbeke filed a report which concluded that the latent fingerprint lifted by Ambrose matched the ring finger on the inked card of defendant prepared by Delaney. The next day, Detective Donald Meadie showed Christensen a photo array which included defendant's picture. Again, Christensen was unable to identify any of the men shown as his assailant. One week later defendant was indicted on charges of home invasion, aggravated battery (based on Christensen's age), and robbery.

Trial took place September 3-5, 1991. Christensen testified that the incident happened "in a flash." He had no chance to focus on the intruder's features and was able only to state that the man was black, between 5 feet 11 inches and 6 feet tall, and was wearing certain clothes. Christensen did not testify as to how old he himself was.

Using side-by-side mounted photographs of the latent fingerprint found on the inside of the storm door of the Lauritson home and the inked print of defendant's left ring finger, expert witness Donald Verbeke testified that the formation of the characteristics in each print was exactly the same. He noted that there were 13 similar characteristics charted in the exhibit. He also stated that there were 10 to 20 other characteristics that had not been illustrated. Verbeke came to the conclusion that the latent print and the inked print were made by the same person. He stated that he did not know when the print was impressed on the door.

Defendant's wife, Deborah White, along with Milana McClinton, Dante Roberts, and Barbara Carley LeFlore, all of whom lived in the Whites' apartment complex, testified as to defendant's whereabouts on July 4. Since it was a holiday, witnesses testified that defendant spent much of it getting his hair permed, watching his three children, and relaxing with neighbors and family as barbecuing took place at the apartment complex.

The eyewitness testimony was somewhat conflicting. For instance, Mrs. White testified as to being picked up by defendant at her mother's house in North Chicago at 8 p.m. It was about a 15 to 20 minute drive from defendant's home in Waukegan to Mrs. White's mother's home in North Chicago. She reported that they arrived at home about 8:30. Then, once at home, defendant remained outdoors at the apartment complex, while his wife went inside, took a bath and a nap until about 10 p.m. Ms. McClinton stated that she saw defendant around the apartment complex at 8:15 p.m., before she left to go to a fireworks exhibition. She arrived home at 10 p.m. Ms. LeFlore found it hard to identify a time in the evening when she talked to defendant, but it was between "light and dark." She also testified that it was

hard to state a time because she had been drinking and could not remember exact times. Dante Roberts testified to seeing the defendant at the apartment complex at several times between 7:45 and 8:30 p.m. At 8:30 p.m. Roberts left to go to a fireworks exhibition, and did not return until 10 p.m. The defendant was reportedly seen at the apartment complex when witnesses McClinton and Roberts arrived home at 10 p.m.

In closing arguments the State argued to the jury that "fingerprints don't lie." Furthermore, the State contended that none of the defense witnesses could place the defendant at his apartment complex at 9:15 p.m., the precise time of the crime.

In closing argument, defense counsel argued that fingerprints may not lie, yet they may be misinterpreted. Counsel then asked the jury to consider the dissimilarities between the fingerprints. Counsel then began to point out dissimilarities between the fingerprints. In response to the State's objection, the record reveals that the court stated:

> "These fingerprints are subject to expert opinion. It's not proper for either counsel to ask the jury to arrive at their [*sic*] opinions as to the similarities of the fingerprints or for either counsel to voice an opinion. That's subject to expert opinion."

Defense counsel continued and insisted that there were visible dissimilarities between the two prints. In response to the State's objection that counsel was trying to put in evidence, the record shows that the court stated:

> "Gentlemen, both of you have made some vague suggestion that the jury compare the fingerprints. These fingerprints are subject to an expert opinion. An expert has looked at the two fingerprints, the known and the unknown, and voiced an opinion. The jury is not to ***."

The court then instructed the jurors to confine themselves to the facts in evidence that they heard from the witness stand and to the reasonable inferences which could be drawn from these facts.

The jury was instructed that, in order to sustain the charge of Class I robbery in this case, they must specifically find that Christensen was 60 years of age or older. The jurors were additionally instructed that to find the defendant guilty of aggravated battery, they must find that defendant had knowledge that Christensen was a person over the age of 60. The jury was also instructed that the members of the jury were the sole judges of the believability of the witnesses and of the weight to be given to the testimony of each of them.

The jury returned verdicts of guilty of home invasion, robbery and aggravated battery. Defendant timely filed a post-trial motion. The court sentenced defendant to five years' imprisonment on the aggravated battery. For the offense of robbery of a person over 60, defendant was sentenced as a Class X offender to 30 years, based on a finding that defendant had been twice convicted of a Class 2 or greater felony in Illinois. He was sentenced to an extended imprisonment term of 40 years for home invasion, the aggravating factor being a specific finding that the victim was 73 years of age. Defendant timely filed a notice of appeal.

Defendant contends that the State did not sustain its burden of proof because it was not able to show that defendant's fingerprint was impressed on the door at the time of the crime. Here, the court is faced with a challenge to the sufficiency of the evidence. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. (*People v. Campbell* (1992), 146 Ill. 2d 363, 374; *People v. Collins* (1985), 106 Ill. 2d 237, 261.) This standard is applicable in all criminal cases, regardless of whether the evidence is direct or circumstantial. (*Campbell*, 146 Ill. 2d at 374; *People v. Pintos* (1989), 133 Ill. 2d 286, 291.) The standard gives "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *Campbell*, 146 Ill. 2d at 375.) Therefore, this court will not substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. (*Campbell*, 146 Ill. 2d at 375.) In addition, this court will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Campbell*, 146 Ill. 2d at 375.

When a conviction rests on circumstantial evidence, it is not necessary that the jury be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. (*People v. Jones* (1985), 105 Ill. 2d 342, 350.) Rather, it is sufficient if all the circumstantial evidence taken together satisfies the jury beyond a reasonable doubt of the defendant's guilt. *Jones*, 105 Ill. 2d at 350.

Fingerprint evidence is circumstantial evidence which attempts to connect the defendant to the offense charged. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 62, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222.) When a conviction is based solely on fingerprint

evidence, the fingerprints must have been found in the immediate vicinity of the crime and under such circumstances that they could only have been made at the time the crime occurred. *People v. Rhodes* (1981), 85 Ill. 2d 241, 249.

The temporal proximity requirement may be satisfied by the State showing that the object on which the fingerprint appears was inaccessible to the accused prior to the commission of the crime. This is usually done by the demonstration that the location of the fingerprint was in a place not accessible to the public. There are several cases in which fingerprint evidence considered in the context of the other evidence was sufficient to sustain a conviction. For instance, in *People v. Taylor* (1965), 32 Ill. 2d 165, defendant's fingerprints were located on the inside of a lower window sash at the site of entry into the victim's home. Similarly, the defendant's fingerprint in *Rhodes* was found on a shard of broken glass six inches from the broken kitchen window which evidently was the point of entry into the house. In that case, the kitchen window was enclosed by a locked porch enclosure. (*People v. Rhodes* (1981), 85 Ill. 2d 241.) In *People v. Reno* (1975), 32 Ill. App. 3d 754, defendant's fingerprint was located on a package of cigarettes found within the murder victim's purse and "chain of contact" evidence established that the fingerprint was defendant's. In *People v. King* (1985), 135 Ill. App. 3d 152, defendant's palm print on a recently washed car parked in a detached garage was sufficient to sustain defendant's conviction of burglary of the garage, although not sufficient to sustain defendant's conviction of residential burglary.

In the present case, the implicating fingerprint was located on the inside of the front porch door. The porch is an enclosed structure, attached to the front of the Lauritsons' house. The porch has an exterior storm door and an inside door, which is constructed of paned glass. To get to the front porch door, one must proceed up a sidewalk from the street and mount a four-step staircase. The fingerprint was located on the inside surface of the porch storm door, above the handle on the door frame surface. The owners of the home both testified that they did not know the defendant, that they never saw him around their house, and that they had no social or business dealings with him.

The defendant maintains that the fingerprint was not located in a private place, such as within the victim's residence, but in a place accessible to the public. The defendant analogizes this case to *People v. Poole* (1981), 99 Ill. App. 3d 939. In that case, a woman was awakened in her apartment when an intruder struck her on the head. The woman was not able to identify the intruder. The defendant's finger-

print was subsequently found on the exterior surface of the victim's apartment door, about 12 inches above the door handle. The door opened into the common hallway of the victim's apartment building. A search of the defendant's apartment did not reveal the camera stolen from the victim's apartment. There was additional evidence that the defendant had been in the victim's apartment building at a time previous to the crime, at an apartment in a different part of the building. Furthermore, there was testimony that it was impossible to determine when the print was impressed.

The court found that it was possible that the print was impressed at a time unrelated to the crime because the print was in a place accessible to the public and the defendant had been in the building on an earlier occasion. (*Poole*, 99 Ill. App. 3d at 941.) Furthermore, it was evidently impossible to tell when the print had been impressed. *Poole*, 99 Ill. App. 3d at 940.

The *Poole* case can be distinguished from the present case despite the fact that there was no evidence about when the fingerprint was impressed on the door in this case. For instance, in the present case, we have the testimony of the owners of the house that they had no business or social dealings with the defendant. Thus, there is no way to demonstrate the defendant was inside the porch touching the door at some time other than the time of the crime. Furthermore, while the outside door to the victim's apartment in *Poole* was a public hallway in an apartment building, the *inside* of the Lauritsons' door in the present case is a place removed from the public. For the public to have access to that location, one would have to walk up the front walk to the Lauritsons' house, mount the steps, and open the door to impress a fingerprint on the inside of the storm door.

■ This court believes that the inside surface of this front porch door was too private to be considered accessible to the public. Furthermore, there is no evidence to place the defendant at the scene of the crime at a time prior to the crime. Thus, this court holds that a rational jury could find the defendant guilty beyond a reasonable doubt on the basis of the fingerprint evidence considered in the context of the other evidence.

Defendant's second contention is that the trial court's comments on the weight accorded expert testimony were improper, therefore denying defendant a fair trial. In criminal proceedings, an accused is entitled to a fair trial by a jury. A fair trial contemplates that the jury alone will fulfill its duty of determining the facts. (*People v. Marino* (1953), 414 Ill. 445, 450.) The ultimate decision of fact must be fairly left to the jury. Judges must refrain from communicating to the jury

their personal opinion concerning any disputed fact. (*People v. Finn* (1959), 17 Ill. 2d 614, 617.) The trier of fact must consider the totality of the evidence, weighing the testimony, both lay and expert, without being required by law to accept expert opinion. (*People v. Eckhardt* (1989), 156 Ill. App. 3d 1077, 1096.) A jury need not accept expert testimony to the exclusion of other evidence. It may reject such testimony if it considers the other evidence more probative. *People v. Bradney* (1988), 170 Ill. App. 3d 839, 855.

In the present case, the defense had the opportunity to cross-examine the State's expert witness or to produce another expert that would contradict the opinion that the State's witness exhorted. According to the record, during cross-examination of the State's expert witness, the defense did not identify or ask the witness to identify any dissimilarities between the defendant's fingerprint and the fingerprint taken from the scene of the crime. Furthermore, the defense did not introduce its own expert witness to interpret the fingerprint evidence. Subsequently the defense, during closing argument, discussed the fact that there were dissimilarities in the two fingerprints which the expert witness had concluded were made by the same finger. According to the record, defense counsel made statements to point out the dissimilarities and they were objected to by the State. That is when the trial court made its first comment:

> "These fingerprints are subject to expert opinion. It's not proper for either counsel to ask the jury to arrive at their [*sic*] opinions as to the similarities of the fingerprints or for either counsel to voice an opinion. That's subject to expert opinion."

Defense counsel purports that the comments went to the weight the jury should ascribe to expert testimony. This court disagrees. The first comment related to the topic of fingerprint evidence being the subject matter of expert testimony. Then defense counsel went on to point out other dissimilarities in the fingerprints. The State again objected, and the trial court made a second statement:

> "Gentlemen, both of you have made some vague suggestion that the jury compare the fingerprints. These fingerprints are subject to an expert opinion. An expert has looked at the two fingerprints, the known and the unknown, and voiced an opinion. The jury is not to \*\*\*."

The jury was subsequently instructed that it was the sole judge of the believability of the witnesses.

This court believes the trial court's comments were proper for two reasons. First, it was improper for defense counsel to introduce new evidence during closing argument. Counsel cannot supply by way

of closing arguments to the jury new or additional facts that are not in the record. (*Flynn v. Cusentino* (1978), 59 Ill. App. 3d 262, 267.) Second, the judge properly indicated that it was improper for the jury or the counsel to express an opinion on the similarity or dissimilarity of the fingerprint from the door and the defendant's fingerprint because fingerprint evidence is the subject matter of expert testimony. Expert testimony is admissible when the subject matter of the inquiry is such that only persons of skill and experience in it are capable of forming a correct judgment as to any facts related to it. (*People v. Jennings* (1911), 252 Ill. 534, 549-50.) Fingerprint evidence is properly the subject matter of expert testimony. (*Jennings*, 252 Ill. at 550.) The jury and counsel were not expert witnesses in this case. Thus, according to the record, the court stated, "it's not proper for either counsel to ask the jury to arrive at their [*sic*] opinions *** or for either counsel to voice an opinion." Furthermore, as to the issue of the proper weight to ascribe to the evidence, the trial court properly instructed the members of the jury that only they are to determine how much weight to give evidence based on the credibility of the witnesses.

The defendant asserts that he was prejudiced because the comments regarding expert testimony undercut defendant's alibi defense. This court does not agree. The statement of instructions by the trial court correctly instructed the jurors that *they* were to decide how much weight to accord the testimony of different witnesses, since they were the sole judges of credibility. By giving this instruction, defendant's alibi defense could not be undercut by the inference that the expert's conclusion was unassailable. Thus, this court finds that the trial judge's comments were proper, and this defendant was not denied a fair trial.

Defendant's third contention is that the State failed to offer any evidence of the victim's age, so the defendant was not proven guilty beyond a reasonable doubt of the charges of Class I robbery and aggravated battery based on the victim's age. The victim was never asked his age when he testified, and no evidence of his age was given to the jury. For the charge of Class I robbery, the jury was given instruction No. 14.04A from the Illinois Pattern Jury Instructions. (Illinois Pattern Jury Instructions, Criminal, No. 14.04A (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d No. 14.04A (Supp. 1989)).) This instruction required a specific finding that "the person from whom the defendant took property was sixty years of age or over." On the charge of aggravated battery, the jury was given the IPI instruction No. 11.10. (IPI Criminal 2d No. 11.10.) This instruction required the

jury to find that the defendant "knew James Christensen to be over the age of 60."

The prosecution has the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime. This responsibility remains that of the prosecution throughout the trial. *People v. Weinstein* (1966), 35 Ill. 2d 467, 470.

Public Act 85—691, effective January 1, 1988, amended the robbery statute to raise robbery from a Class 2 to a Class 1 felony if the victim is 60 years of age or over or physically handicapped. (Ill. Ann. Stat., ch. 38, par. 18—1, Historical & Statutory Notes (Smith-Hurd Supp. 1992).) In *People v. Hicks* (1987), 119 Ill. 2d 29, 34, the court held that where the legislature has amended a criminal statute to add an element which would enhance the offense to a higher class, the element must be pleaded and proved beyond a reasonable doubt to the trier of fact during the evidentiary phase of the trial. The *Hicks* court held that the charge of misdemeanor theft may be enhanced to felony theft when defendant's previous conviction of theft is proved beyond a reasonable doubt.

■ As regards the present case, the Illinois Supreme Court committee on jury instructions in criminal cases added an instruction in its committee notes to the effect that the *Hicks* rationale should be followed for the charge of robbery where the victim is age 60 or over. (IPI Criminal 2d Nos. 14.03A, 14.04A. (Supp. 1989).) We note that *Hicks* has been superseded by statute, as noted in *People v. Williams* (1989), 191 Ill. App. 3d 119, 120, but we believe that the rationale of *Hicks* applies to this case. The legislature passed a statute to supersede *Hicks* on the ground that the prejudice is too great to defendant when prior convictions are revealed to the jury. In the present case, no such prejudice would exist upon the revelation of the victim's age to the jury. In light of the *Hicks* rationale, and the committee's position as evidenced in the notes, we hold that the State must prove beyond a reasonable doubt that the victim was over 60 years of age in order to sustain the conviction of Class I robbery where the victim is over 60 years of age. This burden was not sustained in this case. The jury never heard evidence that the victim was over 60 years old. Thus, the degree of the conviction of robbery is reduced to a Class 2 felony, and the case is remanded to the trial court for resentencing on the modified judgment of robbery pursuant to Supreme Court Rule 615(b)(3). 134 Ill. 2d R. 615(b)(3).

Public Act 81—763, effective September 16, 1979, added persons 60 years of age or older to a protected class of people upon whom an ordinary battery would be treated as an aggravated battery because

those people are members of the protected class. (Ill. Ann. Stat., ch. 38, par. 12—4, Historical & Statutory Notes (Smith-Hurd Supp. 1992).) For this offense, instead of being included in the sentencing portion of the act as was the case for the enhancing element of the robbery offense, the aggravating factor of the victim's age in the aggravated battery statute appears as the substantive element of that offense. Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(10).

In the present case, the court instructed the jury that it must find that the defendant "knew" the victim was 60 years of age or over when the battery was committed. The pattern jury instruction No. 11.10 was rather ambiguous. Instruction No. 11.10 advised the parties to "[p]repare as required alternative [issues] paragraphs for the specified victims and locations contained in Instruction 11.09." (IPI Criminal 2d No. 11.10.) Instruction No. 11.09 defines an aggravated battery based on the victim's age as occurring only if defendant "knowingly and without lawful justification and by any means causes bodily harm to an individual of 60 years of age or older." (IPI Criminal 2d No. 11.09.) Thus, the issue arises, how should this court interpret "knowingly *** causes bodily harm to an individual of 60 years of age or older"?

The knowledge element refers to the *mens rea* for the offense and does not mean that defendant had to have prior knowledge of the victim's age. The court in *People v. Jordan* (1981), 102 Ill. App. 3d 1136, 1139, did a legislative history analysis of the part of the Criminal Code of 1961 that deals with aggravated battery based on the victim's age (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(10)). It concluded that prior knowledge of the victim's age was not an element of the offense. (*Jordan*, 102 Ill. App. 3d at 1139.) The court noted that during debate the legislature compared the lack of *scienter* in section 12—4(b)(10) to other criminal statutes which do not require the State to prove that the defendant was aware of his victim's age. To require such knowledge would be to nullify the statute, because a person's age is not as readily ascertainable as the status of a person, such as fireman or policeman. Thus, the court concluded that the legislature did not intend section 12—4(b)(10) to require the State to prove as an element of the offense that the defendant had prior knowledge of the victim's age. *Jordan*, 102 Ill. App. 3d at 1139.

On a charge of aggravated battery, it is the existence of the aggravating factor that must be proven beyond a reasonable doubt. (*People v. Clark* (1979), 70 Ill. App. 3d 698, 699-700.) If age is an element of an offense or an aggravating factor, it must be proven beyond a reasonable doubt. (*People v. Sanders* (1989), 191 Ill. App. 3d

483, 485-86.) In this case, the State was required, and failed, to prove the age of the victim to sustain the charge of aggravated battery. The defendant's aggravated battery conviction is reduced to battery and the cause is remanded to the trial court for resentencing on the modified judgment of battery pursuant to Supreme Court Rule 615(b)(3). *Clark*, 70 Ill. App. 3d at 700-01; 134 Ill. 2d R. 615(b)(3.)

Defendant asserts and the State agrees that since the conduct involved in the aggravated battery was also the predicate conduct necessary to sustain the charge of home invasion, the defendant's conviction of aggravated battery is barred under the one-act, one-crime doctrine and must be vacated. Defendant further argues that aggravated battery is a lesser included offense of home invasion and on that basis the conviction of aggravated battery should be vacated.

The controlling statute at the time of the offense and sentencing was section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a)), which stated in pertinent part:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective ***."

Multiple convictions cannot be carved from the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 566.) In this case, it is clear that the same predicate act which led to the conviction of aggravated battery is exactly the conduct necessary to sustain the charge of home invasion. Also, this court has found that the aggravated battery conviction should be reduced to a battery conviction. Thus, this court holds that on the basis of *King* the battery conviction should be vacated. Since we have held that the battery conviction should be vacated on that basis, it is not necessary for this court to decide whether battery constitutes a lesser included offense of home invasion.

The defendant argues that he was denied due process when an extended-term sentence was imposed upon the defendant in the home invasion charge based on the aggravating factor of the victim's age, since the defense argues that no reliable evidence of age had been presented. Pursuant to the extended-term portion of the statute, the trial court may sentence the defendant to an extended term if factors in aggravation are present. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—2.) One of the factors in aggravation is present when the defendant committed the offense against a person 60 years of age or older. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(a)(8).) On appeal, a sentence may be reduced pursuant to Supreme Court Rule 615(b)(4). (134

Ill. 2d R. 615(b)(4).) The imposition of a sentence is a matter of judicial discretion and, absent abuse of that discretion, the sentence of the trial court may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) The ordinary rules of evidence need not be followed during a sentencing hearing. (*People v. Adkins* (1968), 41 Ill. 2d 297, 301.) Evidence presented to the sentencing court must be competent and material, and the sentencing court may search diligently for evidence which will be relied upon in aggravation or mitigation. *People v. Devine* (1981), 101 Ill. App. 3d 158, 166.

■ In the present case, there is a statement in the presentence report that the victim was age 73. Illinois courts rely on the presentence report to weight factors in sentencing. (*People v. Youngbey* (1980), 82 Ill. 2d 556, 565.) In this case, according to the record, the trial court considered the presentence report. The record indicates that the trial judge stated that he "[found] that on July 4th, 1991, James Christianson [*sic*] was aged 73." Thus, although no evidence was presented as to the age of the victim at trial, the judge, in sentencing, did have access to evidence of that fact. Thus, this court finds that the trial court did not abuse it's discretion in imposing an extended-term sentence where the presentence report revealed that the victim was over 60 years of age.

For the reasons presented above, we affirm defendant's conviction of home invasion, modify defendant's conviction of robbery from a Class 1 to a Class 2 offense, and vacate the battery conviction. Furthermore, we remand the robbery conviction to the trial court for resentencing. .

Affirmed in part; modified in part; vacated in part and remanded.

INGLIS, P.J., and UNVERZAGT, J., concur.